### Hiram Sharp's Ex'r v. Silas Baker.

In a suit by the vendor, against the vendee, on a note given for a part of the purchase money of a tract of land, the defendant set up, as a defence, a failure of consideration, in this, that the plaintiff had bound himself, in a title bond, to make him a "good and sufficient deed" to the land, which he was unable to make, and had never had title to the land; and specified the defects of the plaintiff's title: the plaintiff averred, that the defendant purchased of him with notice of the character of his title, and took the risk of it: the defendant prayed a rescission of the contract, and alleged his readiness and willingness to pay the purchase money, if plaintiff would make him a good title: and the plaintiff also prayed a rescission of the contract: *Held,* that there being evidence tending to prove, that the defendant purchased with notice of the character of the plaintiff's title, it was error in the court below, in its charge to the jury, to take for granted, as the starting point in the controversy, that the contract must be rescinded, if the title was not in the plaintiff; and to fail entirely to charge the jury, upon the issue presented by the plaintiff, that the defendant took the risk of his title, with full notice of its character; especially, as attention was called to it, by the charges asked by the plaintiff

Where a vendor, by his bond for title, binds himself to make the vendee a good and sufficient deed, when the purchase money shall be paid, and brings suit for a part of it, the vendee cannot resist the payment merely on the ground that the vendor's title is defective. The vendor is under no obligation to remove difficulties affecting the title, until the purchase money be paid.

The vendee, in such case, may pay the money into court, or allege a readiness to pay it, upon the title being made clear; when the court should suspend the plaintiff's remedy in the collection of the money, or otherwise protect the vendee, so that he shall get a good title, when the plaintiff receives the purchase money.

If the vendee in the purchase of a tract of land, have full notice, or take upon himself the risk of a tax title, under which the vendor claims, and only stipulates for a deed, or regular chain of title under it; the court may enforce the contract, (both parties asked that the contract of sale might be carried out and enforced, if it could be done upon the terms suggested by each of them respectively,) and at the same time, so guard the rights of the vendee, as to require the chain of title under the said tax title to be perfected, before the vendor is allowed to collect the purchase money.   .

In such a case, so peculiarly of equity cognizance, the facts being found upon special issues submitted, the final decree may be suspended, until the rights of the parties can be adjusted, and fully secured, in the enforcement of their contract.

It seems, that the proper course, in complicated cases, like this, is to submit special issues for the finding of the jury.

The admission of illegal evidence, without objection, does not add any weight to it, if intrinsically it had none, and should have been excluded, upon objection. Not the introduction, but its merit, gives weight to evidence.

APPEAL from Navarro.    Tried below before the Hon. R. A. Reeves.

This action was brought in the court below by Hiram Sharp, the appellant, against Silas Baker, the appellee, on a promissory note for the sum of $400. The defendant answered by a general denial, and also answered specially in an original answer and several amendments, that the note was given in part payment for a tract of land, bought by Baker of Sharp, for which he held Sharp's bond, to make him a good and sufficient deed; that Sharp represented himself as having a good and legal title to the land, but in truth he had no title, except a bond from one Jourdon, who claimed under and through a void tax title; that the land was a portion of a six hundred and forty acre survey, made upon a land warrant to one J. H. Mills, and known as the J. H. Mills survey; that the tax title arose under a void sale, made by the tax collector, for the years 1849 and 1850, for taxes assessed against Mills; that the proceedings, in assess-

ing and selling, were illegal and void, (pointing out in what particulars they were defective;) that Mills, previous to that time, had sold the land to one Smith, and that. the title was then vested in said Smith.   He also alleged that Mills was dead, and that the title to the land was vested in the heirs of Mills; that the tax collector, at the pretended sale for taxes, made a pretended deed or certificate for the land, to Louisa Frost and Lucinda McCabe; that the land, pretended to be sold to Baker, was a portion of said tract, sold and conveyed by said Lucinda to said Jourdon; that said Lucinda was a married woman, and was not joined in the conveyance to Jourdon by her husband, nor was she examined separate and apart from her husband, by the officer who took her acknowledgment; that the title from Jourdon to Sharp, was merely a bond from Jourdon, in which he obligated himself to procure a, deed from the State, within a reasonable time; that Jourdon had died, without procuring said deed; that Sharp, at the time of the sale to Baker, had no valid title to the land, nor had he any at the time of the institution of the suit, and was wholly unable to make a valid title to Baker; that all of the representations of Sharp were false and fraudulent; that Sharp was insolvent, and that if defendant relied upon his bond, to recover back the purchase money, after paying it, with damages, he must necessarily lose the whole amount; that defendant had paid to Sharp, at the time of the purchase, seven hundred dollars in cash, and had given the note sued on, and another for the same amount, due one year after, for the purchase money, and had paid $        on the note sued on; that he had made improvements upon the land, to the value of $        Defendant averred a readiness to pay the balance of the purchase money, on obtaining a good title to the land; and in the event of not obtaining such title, he tendered the bond for cancellation, and a surrender of the possession of the premises; and prayed judgment for the amount of the purchase money paid, with interest, and the value of said improvements.

The plaintiff amended, and admitted possession of the additional note referred to by the defendant, not sued on, and the amount

paid by the defendant, but denied all fraud; and alleged that Baker, at the time of his purchase, was fully advised of all the facts in relation to the tax title, and made the purchase with a full understanding that he took the entire risk of the tax title upon himself; and that he put defendant in possession of said land, on the 21st February, 1855. He alleged that defendant had unlawfully neglected and refused to comply with the contract, wherefore he tendered both of the said notes to be cancelled, and prayed that the money paid by defendant, might be forfeited to him, and the defendant adjudged to pay for the rents and profits of the land, which he averred to be worth four hundred dollars per annum, from the 1st day of February, 1855; and that the bond of the plaintiff, held by the defendant, might also be cancelled. General exceptions were filed by both parties to the pleadings, and overruled by the court on the trial of the cause. The deed from McCabe, the tax collector, to Frost and Lucinda McCabe; a deed of partition, between Frost and McCabe; a deed from Lucinda McCabe, to Jourdon; a bond from Jourdon to Sharp; and the bond from Sharp, to Baker, were all introduced and read in evidence; as was also the note, on which the suit was brought, on which was an endorsement of $157 17; and the other note for $400, not sued on.

The plaintiff proved, by Jourdon Brown, that he was present at the trade between Sharp and Baker; was requested by Baker to read Sharp's title, which he did, and told Baker it was nothing but a tax receipt, or title, for land sold for taxes; was confident that Baker perfectly understood the character of the title; that in that conversation, Baker remarked to witness, that if plaintiff's title was not good, the place would answer for a home until he could get another. Witness did not recollect what passed between plaintiff and defendant, in relation to the title. In a second set of interrogatories to the same witness, he answered, that he was present at the trade, read to Baker, Sharp's title bond from Jourdon, that Sharp proposed to assign to Baker, which Baker declined, but paid Sharp some money, and took his bond. Witness did not recollect if anything was said, be-

tween the parties, as to the character of the title. There were several witnesses sworn as to the quantity of the improved land, the value of the rent, and the value of the improvements made by Baker, about each of which there was some difference of opinion. The defendant proved by a witness, without objection, that witness was acquainted with the Mills survey of 640 acres; did not know Mills, nor whether he was living or dead; supposed he was a citizen of Texas; saw in 1850 or 1851, on file in the adjutant general's office, at Austin, what purported to be an assignment, or deed of conveyance from Mills to a person, not the plaintiff or defendant, or any of the parties under whom plaintiff or defendant claimed; did not know where the bond now was; searched for it in 1850 or 1851, to ascertain if the person, who had it located, really owned it; knew of no other search for it; the instrument was dated in 1837 or 1838; could not state definitely its contents; but was under the impression from having read it, that it was in the usual form of a deed, or conveyance for a bounty land, or other certificate. It was witnessed by two witnessess, with whose handwriting witness was well acquainted, but it was not authenticated for record.

Defendant proved by the county clerk, that no delinquent list for the years, during which the land purported to have been assessed to Mills, had ever been returned to the clerk's office; and by another witness, that no such man as J. H. Mills, resided in Navarro county, in 1847 or 1848, nor since that time.

The evidence being concluded, the court charged the jury, "that if it appears from the evidence, that McCabe, as assessor "and collector of taxes, conveyed the land for which the note in "suit was given, to Lucinda McCabe, and that she conveyed to "Jourdon, and that the latter sold to Hiram Sharp, and exe-"cuted his bond to make title, it would be incumbent on the "plaintiff, in such case, to show that the assessor had complied "with the law in making and returning to the county clerk's "office, his assessment roll or list of delinquent tax payers, in "which the land must have been described in such way, as "would be notice to the owner, if he was unknown. If the

"evidence shows, that the land was described in the assessment, "as a survey made for J. H. Mills, such description, and a "conveyance by the assessor, in such case, would only convey "such right as Mills may have had at the time, and would not "affect Mills's vendee, or a previous purchaser from him ; or, if "Lucinda McCabe, one of the purchasers at the tax sale, was a "married woman, at the date of the purchase, her subsequent "sale to Jourdon, (if there is evidence of such sale,) would not "convey a good title, unless the evidence shows that her hus-"band consented that she might sell or convey ; or, if the evi-"dence makes it appear that Jourdon is dead, and has never "conveyed to Sharp, it would be incumbent on the plaintiff to "show that a good title can be obtained from his estate, or if "alive, that he could make such a title. If the jury believed "from the evidence, and the foregoing instructions, that the "title to the land is not in Sharp, but is outstanding in some " other person, under whom Sharp does not claim, the defendant, "under such circumstances, might resist the payment of the "purchase money, and rescind the contract with Sharp. Should "you find that the defendant purchased, with notice of the "condition of Sharp's title, without fraud or false representa-"tions of the latter, you will allow the defendant the amount "that he may appear, from the evidence, to have paid Sharp "on account of the purchase, and eight per cent. interest from "the time of payment to this date. You will also ascertain "from the evidence, the value of the rents and profits arising "from the use of the premises, from the date of Baker's pos-"session to the present time ; also the value of any permanent " and valuable improvements, that Baker may appear to have "made on the premises, up to the time of filing the amended "petition, on the 10th of April, 1857, and after taking one sum "from the other, find for the party in whose favor the balance "may appear. If this balance should be in favor of Sharp, "deduct the amount from the sum that Baker may have paid on "the land, as mentioned in a former part of this charge, and "render a verdict for the excess, for Baker ; or, if the balance

"should be greater than the amount paid by Baker, on the pur-
"chase, render a verdict for the excess for Sharp. If you find
"from the evidence, that Baker purchased, without notice of the
"condition of Sharp's title, and that the latter was guilty of
"fraud in making the sale, or by fraudulent representations
"induced Baker to purchase, in such case, the jury would be
"authorized to allow Baker compensation for valuable improve-
"ments made by him on the land, and refuse compensation to
"Sharp for the rent. Fraud, however, cannot be presumed, but
"must be proved, and this may be done by circumstances, as
"well as by direct evidence. If you should find that there was
"such fraud, and should not allow Sharp for the rents, you will,
"in such event, add the value of the improvements, to the
"amount of purchase money that Baker may have paid on ac-
"count of the land, and render verdict for the plaintiff, for the
"whole amount."

The plaintiff asked the court to instruct the jury: 1st. That
if the jury believed, from the evidence, that the defendant,
Baker, purchased with a full knowledge of the condition of
plaintiff's title, and without any fraud on the part of Sharp,
and that the defendant, Baker, afterwards failed and refused to
pay the balance of the purchase money, when due, Baker is not
entitled to recover back that part of the purchase money which
he had paid, nor pay for his improvements. 2d. That if Baker
purchased, with a full knowledge of the defects of Sharp's title,
and relied on Sharp's bond for his security, Baker could not
afterwards refuse to carry out the contract, on the ground of
defect of title, but must rely on the security he had taken.
3d. That the phrase, "good and sufficient deed," in the title
bond of Sharp to Baker, means a good and sufficient convey-
ance of such title as Sharp had, or might acquire, and not a
connected chain of title. The foregoing charges being refused,
the plaintiff excepted, as also to the charge as given; and the
cause was submitted to the jury, who returned a verdict for the
defendant, as follows: "We the jury find for the defendant.
"Improvements $116; money paid, $857 17; interest $205 69;

"total $1178 86." The court thereupon rendered a decree, rescinding the contract of sale; cancelling the bond from Sharp to Baker, and the two notes from Baker to Sharp, for $400 each; awarding possession of the land, (described in the title bond) to the plaintiff, with a writ therefor; and rendered judgment in favor of the defendant, against the estate of Hiram Sharp, for the amount found by the jury, to be paid in due course of administration. On plaintiff's motion for new trial, the defendant entered a *remittitur* of $216 on the judgment. The motion was overruled, and the plaintiff prayed an appeal to this court.

*Barziza* and *Gould*, for appellants.

ROBERTS, J. It will be necessary to notice only a few of the leading features of this case. Sharp brought a suit on a note under seal. Baker pleaded a failure of consideration, to wit, that it was given in part payment of one hundred and seventy acres of land, sold by Sharp to him; that Sharp had bound himself, in a title bond, to make him a "good and sufficient deed" to the land; that Sharp derived his right through a defective tax title; that the title to the land, was outstanding in another person, different from the person under whom Sharp claimed; that his right depended upon a deed from a married woman, who had conveyed without the consent of her husband, and without a private acknowledgment of her deed; and that Sharp had not made, and could not make, a good title to said land. Defendant prayed for a rescission of the contract of sale; a recovery back of the purchase money that had been paid, about eight hundred dollars; also for the value of his improvements, about two hundred dollars; and offered to restore possession of the premises. He also alleged his willingness and readiness, to pay the whole of the purchase money, if Sharp will make him a good title to the land.

The plaintiff amended his petition, by denying the allegations of the defendant, as to the defects of his title, and by

replying that Sharp, at the time of the sale, purchased with full notice of the character of his title, and took the risk of it; and that he was not bound to make a deed, until the purchase money was wholly paid; and further, that Baker had failed and refused to carry out the contract of sale; that he had enjoyed the rents and profits of the land, which were worth several hundred dollars, &c.; asked a rescission of the contract; that Baker should be decreed to forfeit the purchase money already paid; that he recover the rents, and be restored to the possession of the land.

It will be observed, that each party asks that the contract of sale shall be carried out and enforced, if it can be done upon his own terms; and that each party asks that the contract shall be rescinded, upon certain terms and conditions, prescribed by himself. The rescission, with its dependent consequences, as prescribed by each, is sought by each, as an alternative remedy, only upon the condition that the contract cannot be enforced, in a manner conformable to his own view of the facts, and to his own construction of the contract.

The charge of the court does not so treat the issues, but takes for granted, as the starting point in the controversy, that the contract must be rescinded, if the title is not in Sharp, but is outstanding in another; and seeks to settle the rights of the parties, only on that basis. There is no part of the charge, which contemplates the enforcement of the contract, upon any other terms. It must, therefore, be erroneous, if there be found in the record any evidence, reasonably tending to prove the plaintiff's right to have it enforced upon other terms. The difficulties in Sharp's title, arising out of Mrs. McCabe's deed to Jourdon, and Jourdon's death before making a deed to Sharp, might have been obviated by Sharp; and he was not bound to remove those difficulties, by the terms of his bond, until the purchase money was paid. The only modification of this rule, which Baker had a right to insist upon, was that, upon paying the money into court, or upon alleging a readiness to pay it, upon the title being made clear, the court should sus-

pend the plaintiff's remedy in the collection of the money, or otherwise protect the defendant, so that he should get a good title, when the plaintiff should be allowed to receive the said purchase money.

The most insurmountable difficulty in Sharp's title, arose out of the fact, that it was a tax title, the land having been sold for taxes, as the property of Mills. The evidence was by no means conclusive, that Mills had transferred the land before the date of the tax sale. The testimony on this subject, shows that the transfer was witnessed; still, neither the names of the witnesses, nor that of the grantee, are disclosed. The witnesses are not called to prove the transfer. The witness merely saw the deed, purporting to be a transfer, in the adjutant general's office. The admission of such evidence, without objection, does not add any weight to it, if intrinsically it had none, and should have been excluded, upon objection. Evidence does not have weight, because it is admitted; but it is admitted, because it deserves to have weight.

As the jury, then, may have found that the land belonged to Mills, at the time it was sold for taxes as his property, it becomes important to ascertain whether there is anything in the case, which will relieve Sharp from any defects, that may have been shown to exist in said tax title.

The testimony of Brown certainly tends to prove, that the sale was a fair one; and that Baker purchased the land, with a full knowledge that Sharp's right depended upon a tax title; and that he took the risk of such title. It may not prove this fully; but it reasonably tends in that direction, with too much force, to be entirely disregarded, and taken from the consideration of the jury, by the court. Had there been special issues submitted, (which would have been the proper course in so complicated a case,) and the jury had found that the sale was fair, and that Baker had full notice of the tax title, or that he took upon himself the risk of the tax title, and only stipulated for a deed, or regular chain of title under it, the court might have enforced the contract, and at the same time, so guarded the

rights of the defendant, as to have required this chain to be perfected, before plaintiff should be allowed to collect the purchase money. Had all the facts been found upon special issues submitted, the court might, if necessary, in a case so peculiarly of equity cognizance, have suspended its final decree, until the rights of the parties could be adjusted and fully secured, in the enforcement of their contract.

Had the defendant, after the maturity of both of the notes, and after the last one was ingrafted upon the suit, alleged a readiness to pay the balance of the purchase money, upon plaintiff manifestiug his capacity to make a regular chain of transfer under the tax title, then the court, in the exercise of its equitable powers, would have been moved into activity on behalf of the defendant, so as to relieve him from the necessity of a cross action, separately brought, after paying the money, to obtain such chain of transfer, or recover damages under the forfeiture in the bond.

But this is not what he alleged. He alleged his readiness to pay the balance of the purchase money, if plaintiff would manifest his ability and readiness to make him a *good and valid title* to the land. The court, in the charge to the jury, has put its powers in motion, in his behalf, by taking it for granted that the plaintiff was bound to make such good title, before he could collect the purchase money, notwithstanding there is evidence in the case, tending to show that plaintiff was not so bound; but, on the contrary, that Baker understood himself as purchasing only a tax title.

Whether Baker bought with such notice, and with such risk, or not, seems to be the leading matter in the controversy, both in the pleading and in the evidence. It was error, in the court, to fail entirely to charge upon it; especially, as attention was called to it by the charges asked by the plaintiff. Those charges, thus asked, may not be exactly correct, nor is it necessary that they should be, to put the court upon its guard, in reference to a clear omission in the original charge.

The different parts of the charge, subsidiary to this main proposition, need not be discussed.   Judgment is reversed and the cause remanded.

Reversed and remanded.