HOLDER v. MFG. CO.

(Filed May 11, 1904).

1. HEARSAY EVIDENCE—*Exceptions and Objections—Appeal.*

Where hearsay evidence is admitted without objection and considered by the jury, an objection thereto will not be considered on appeal.

2. DAMAGES—*Malice—Master and Servant.*

In an action for damages for causing the discharge of an employee, actual malice need not be shown, it being sufficient if the act is done without legal excuse.

3. DAMAGES—*Master and Servant.*

In an action for damages for causing plaintiff's discharge by his employer, a charge that, if the same person was assistant manager of defendant and of plaintiff's employer, and of his own motion directed plaintiff's discharge, the jury should find for defendant, was properly modified by inserting before the concluding phrase, "without demand or direction of the defendant."

CONNOR and WALKER, JJ., dissenting.

ACTION by D. M. Holder against the Cannon Manufacturing Company, heard by *Judge T. A. McNeill* and a jury, at February Term, 1904, of the Superior Court of CABARRUS County. From a judgment for the plaintiff the defendant appealed.

*Montgomery & Crowell* and *M. B. Stickley,* for the plaintiff.
*W. G. Means,* for the defendant.

MONTGOMERY, J. The plaintiff brought this action to recover of the defendant damages for causing him to be discharged from the service and employment of the Gibson

Manufacturing Company. There was evidence to the effect that in June, 1903, the plaintiff was employed, and at that time was in the service of the Gibson Manufacturing Company, and that his work was satisfactory to the company, according to the testimony of W. E. Stafford, the boss of the weaving-room in which the plaintiff worked. The plaintiff testified that when Stafford discharged him he asked Stafford the cause of the discharge, and Stafford replied that he had had a letter from the Cannon Manufacturing Company and that that company wanted him discharged, but that he hated to do it. He also testified that B. A. Price, the superintendent of the Gibson Mill, told him that he had a letter from the Cannon Company and had to follow it. He said further that he asked Roberts, the boss weaver at the Cannon Mill, whether he or Barnhardt, assistant manager of the defendant, wrote the letter, and that Roberts made no answer. Price and Stafford both testified for the defendant that they had never received any letter from any person connected with the Cannon Mill in reference to the discharge of the plaintiff, and that they never said one word to the plaintiff about having received such a letter.

That evidence of the plaintiff was nothing but hearsay, and would not have been received if it had been objected to by the defendant. But not having been objected to it went to the jury as evidence, and there is no exception to it to be heard by us.

E. C. Barnhardt testified for the defendant that he was assistant manager of both the defendant company and the Gibson Company, and that he had the authority to discharge or have hands discharged; that he, as assistant manager of the Gibson Mill, had the plaintiff discharged of his own motion, without conference or suggestion from any officer or agent of the defendant company, and that there was no letter about discharging him. On cross-examination that

witness said that he discharged the plaintiff because he refused to make up some lost time at the Cannon Mill and he did not want that kind of a man at the Gibson Mill; that the plaintiff had gone out on a strike at the Cannon Mill, and that upon seeing his looms standing still he asked the plaintiff if he was sick, and he answered that he was not. The witness further testified that the defendant company is a different company from the Gibson Company, but that the general officers, managers and assistant managers are the same in both companies and attend to the business of each and both.

In the fourth allegation of the complaint it was alleged that the defendant company, through its officers or agents, while the plaintiff was in the employment of the Gibson Company, unlawfully, willfully and maliciously, for the purpose of injuring the plaintiff in his occupation and reputation, and of humiliating him and depriving him of the right to earn a living, conspired to have discharged and procured the discharge of the plaintiff from the employment of the Gibson Company by certain false and fraudulent representations. In the answer there was a general denial of that allegation.

On the trial the defendant undertook to show by evidence that it had no communication with or suggestion from the defendant company on the subject of the plaintiff's discharge from the employment of the Gibson Company, but that the Gibson Company acted in the matter solely and entirely upon information which came to Barnhardt, the assistant manager of the Gibson Company, by reason of his connection with the defendant company. Upon Barnhardt's testimony, the defendant could have asked the Court to instruct the jury that, as the contract between the plaintiff and the defendant was indefinite as to time, the defendant company would not be responsible for the discharge of the plaintiff, because of knowledge of the character of the plaintiff and of his conduct at the defendant's mill, acquired by Barnhardt as assistant

manager of both mills.    But no such request for instructions was made by the defendant.    The jury took the view, notwithstanding the testimony of Price, of Stafford and of Barnhardt, that no letter or communication had been received by the Gibson Company from the defendant on the subject of the plaintiff's discharge, that the plaintiff's testimony to that effect was true, and their verdict was rendered on that theory of the case.

The plaintiff's evidence tended to show that he was discharged without cause by the defendant company, and that he was discharged from the employment of the Gibson Company, while giving satisfaction in his work to that company, by a letter from the defendant demanding his discharge from the service of the Gibson Company, and upon that evidence, believed by the jury, the law applicable to the case seems to be clear.

In order to constitute malice in a case like the present it is not necessary that the defendant should show actual ill-will or hatred to the plaintiff, but it is sufficient if the act done, to the apparent damage of the plaintiff, is without legal excuse.    Any person who, by any act causes the discharge of another from the service of a third party maliciously and willfully, that is, without lawful justification, is liable to the injured party for damages.    *Haskins v. Royster,* 70 N. C., 601, 16 Am. Rep., 780; *Morgan v. Smith,* 77 N. C., 37.

There was no exception to the charge of his Honor.    The defendant asked the Court to instruct the jury to answer the first issue, "Did the defendant wrongfully and unlawfully cause the discharge of the plaintiff by the Gibson Manufacturing Company as alleged in the complaint? No."    And the instruction was properly refused.    Again the defendant asked for an instruction that, if the jury should find from the evidence that Barnhardt was the assistant manager of the Gibson Company, and as such manager had the right to direct

the discharge of the employees of the company, and as such manager, of his own motion, and in the exercise of his authority, directed the plaintiff to be discharged from the employment of the Gibson Company, whether such discharge was right or wrong, the jury will answer the first issue "No." His Honor, under the evidence in this case, added to the instruction the words "without demand or direction of the defendant," in connection with the right of Barnhardt to discharge the plaintiff from the employment of the Gibson Company. The addition was proper.

A further special instruction was asked by the defendant on the question of the duty of the plaintiff to satisfy the jury by a preponderance of the evidence that the defendant, through its officers and agents, unlawfully and maliciously caused the discharge of the plaintiff, which was given, except the following portion thereof, viz.: "And although the jury may find from the evidence that the Gibson Manufacturing Company discharged the plaintiff from its employment in consequence of representations made to it by the officers, agents and servants of the defendant, and he would not have been discharged except for such representations, yet if the jury further find from the evidence that such representations were true, they will answer the first issue "No." We think that his Honor committed no error in refusing to give that part of the instruction which we have quoted above. It is true that in the plaintiff's complaint there is an allegation that the defendant procured his discharge by conspiracy and by false and fraudulent representations to the Gibson Company, but such an allegation was not necessary or essential to the prosecution of the action by the plaintiff. It is sufficient that the act is alleged to have been done maliciously, willfully and unlawfully. *Jones v. Stanly,* 76 N. C., 355; *Haskins v. Royster, supra; Morgan v. Smith, supra.* The question was not whether the plaintiff was discharged by

reason of the false or fraudulent representations of the defendant, but was the discharge procured through malice, that is, without a lawful justification? The conduct of the plaintiff at the defendant's mill at the time he was discharged from the defendant's service was not such that the defendant could use with a subsequent employer to effect the discharge of the plaintiff. Furthermore, it did not appear on the trial what the representations in the letter were. The instructions asked and refused were based on the allegation in the complaint, and not on the evidence.

It is not to be understood by anything said in this opinion that one employer cannot inquire of another of the character and habits of a former employee of that other, and that an answer made in good faith and upon a knowledge of facts and acted upon by the recipient would subject the giver of the information to a suit in damages.

No Error.


CONNOR, J., dissenting. The plaintiff alleges that while he was in the employment of the Gibson Manufacturing Company, the defendant "unlawfully, willfully and maliciously, for the purpose of injuring the said plaintiff   *   *   * did contrive, conspire and procure the discharge of the said plaintiff from the employment of the said Gibson Manufacturing Company, by certain false and fraudulent representations to the said Gibson Manufacturing Company." The only evidence tending to sustain the allegation is that of the plaintiff, in which he says that Stafford, the boss of the weave-room of the Gibson Company, told him that the defendant manufacturing company objected to his working there, and that he had a letter from the defendant company to discharge him. Passing by the objection that this was simply hearsay, there is not the slightest suggestion as to what officer, agent or employee of the defendant company wrote, or was

authorized to write, the alleged letter. There is not a scintilla of evidence tending to show that any letter was ever written by any officer or agent of the defendant company. On the contrary Stafford and Price, the employees of the Gibson Company, denied that they or either of them had seen such a letter, or that they ever said to the plaintiff that such letter had been written or received by them. E. C. Barnhardt, who was the assistant manager of the defendant company and of the Gibson Manufacturing Company, testified that he had the plaintiff discharged from the Gibson Company as the assistant manager of that company, and not of the defendant company; that he had him discharged of his own motion, without any suggestion from any officer or agent of the defendant company; that there was no letter about discharging him. There was not the slightest contradiction of this testimony.

Although the allegation made by the plaintiff is that the defendant unlawfully and maliciously procured his discharge, the issue submitted is confined to the *"wrongful and unlawful"* discharge of the plaintiff. Notwithstanding this form of the issue, the Judge below said to the jury: "You can also, if the charge was malicious, that is, intentional and willful, and without cause, and for the purpose of depriving the plaintiff of his job or service, award what are called punitory or exemplary damages for the wanton conduct of the defendant in bringing about the discharge, if by its servants and agents it did so." The objection to this instruction is found in the fact, first, that no issue was submitted to the jury in regard to the malicious conduct of the defendant, and next, because there was no evidence tending to show malice. It may well be that the defendant wrongfully and unlawfully procured the discharge of the plaintiff, without having done so maliciously or wantonly.

"The primary purpose of an action for damages is to

recover compensation for the actual loss or injury sustained. The liability for punitive or exemplary damages, however, being for the purpose of punishment, or as an example, rests primarily upon the question of motive. And the jury are not at liberty to go beyond the allowance of a compensation, unless it be shown that the act was done willfully, maliciously or wantonly, or was the result of a reckless indifference to the rights of others, which is equivalent to an intentional injury; and when there is no proof that the injury was so inflicted, exemplary damages should not be allowed." Joyce on Damages, section 119; *Wood v. Bank* (Va.), 40 S. E., Rep., 931; *Gilreath v. Allen,* 32 N. C., 67. The wrongful injury gives the right of action for compensation. The malicious, wicked motive gives the right to punitive damages. *Holmes v. Railroad,* 94 N. C., 319.

It is manifest that the jury awarded the plaintiff punitive damages because, on his own evidence, he was discharged about the 8th of August and got a regular job on the 14th of September. He testified that he earned $7.50 a week.

For the reasons pointed out, and others apparent upon the record, I am unable to concur in the conclusion reached by a majority of the Court. I think that, in any point of view, the defendant is entitled to a new trial.

WALKER, J., concurs in the dissenting opinion.