MRS. BURLEY WOODIE CAUDILL, ADMINISTRATRIX OF THE ESTATE OF DONNIE CAUDILL v. NATIONWIDE MUTUAL INSURANCE COMPANY OF COLUMBUS, OHIO.

(Filed 18 June, 1965.)

**1. Insurance § 47.1—**

Liability of insurer under a "hit-and-run" provision of a policy of insurance must be predicated upon a collision of the vehicle in which an insured was riding with another vehicle operated by an unidentified driver, which collision was proximately caused by the negligence of such unidentified driver, and the filing by plaintiff with insurer of a report of the accident as required by the policy or as permitted by law.

**2. Trial § 21—**

Upon motion to nonsuit, defendant's evidence which is not in conflict with that of plaintiff may be considered insofar as it explains or makes clear the evidence of plaintiff.

**3. Appeal and Error § 51—**

While incompetent evidence admitted without objection must be considered in passing upon the sufficiency of the evidence to overrule nonsuit, the fact of the admission of the incompetent evidence adds nothing to its

weight, and if it is without probative force it cannot warrant a reversing of the nonsuit.

**4. Evidence § 35—**

The conclusion of a witness who was not present, as to how an accident occurred, is without probative value.

**5. Trial § 22—**

Where the testimony of the witness is without probative force in establishing the fact in issue, an *ex parte* affidavit by plaintiff based upon the statements of the witness to plaintiff's insurance adjuster, which statements were consistent with the witness' testimony at the trial, cannot constitute evidence sufficient to take the issue to the jury.

**6. Insurance § 47.1—**

The evidence in this case *is held* insufficient to show that intestate was forced off the highway by the negligent operation of another vehicle by an unidentified driver, and nonsuit should have been entered in plaintiff's action on the "hit-and-run" provision in the policy sued on.

APPEAL by defendant from *McConnell, J.,* January 1965 Regular Civil Session of WILKES.

Action to recover a $5,000.00 death benefit allegedly due under the uninsured-automobile provisions of a family-automobile and comprehensive-liability insurance policy.

These facts are admitted: Plaintiff is the duly appointed administratrix of her son, Donnie Caudill, a member of her household, who died on November 26, 1961, at the age of 19, as the result of injuries sustained on that day while operating a 1947 Ford individually owned by plaintiff. At the time of the accident the Ford was covered by a liability policy containing an Endorsement #644, entitled, "Protection Against Uninsured Motorists Insurance." By the terms of this endorsement defendant agreed, *inter alia,* to pay all sums, not in excess of $5,000.00, which the insured and, while residents of the same household, her relatives, or their legal representatives, should be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of death resulting from bodily injury. The term *uninsured automobile* included a hit-and-run automobile, which was defined in paragraph II(d), as follows:

(A)n automobile, other than one in which an Insured is a passenger, which is involved in an accident causing bodily injury to an Insured, provided: (i) there cannot be ascertained the identity of either the operator or the owner of such "hit-and-run automobile"; (ii) the Insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed

with the Company within 30 days thereafter a statement under oath that the Insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (iii) at the Company's request, the Insured or his legal representative makes available for inspection any automobile which the Insured was occupying at the time of the accident.

Plaintiff alleges that her intestate, while operating the Ford on County Road No. 1513 in the Miller's Creek section of Wilkes County, was overtaken by an unidentified motorist who, while traveling at an unlawful rate of speed, attempted to pass on intestate's right in violation of G.S. 20-149(a); that in doing so he forced intestate off the road and into a ditch, where his automobile turned over; that intestate was thrown from the car and received the injuries from which he died.

Answering, defendant denied that any motorist other than intestate was involved in the accident. It alleges that the upset which caused intestate's death was caused by his own high speed and failure to keep his vehicle under proper control. In addition to intestate's own negligence, it pled, in bar of plaintiff's right to recover, her failure to file with the company within 30 days of the accident the affidavit required by paragraph II(d).

Plaintiff offered evidence tending to show these facts: On Sunday evening, November 26, 1961, intestate had attended a B. T. U. meeting at Miller's Creek Baptist Church. When it was over at 7:30 p.m., he followed Helen Barfield, his girl friend, on the Miller's Creek Schoolhouse Road (No. 1513) to her home on a dirt road a short distance off the paved highway. He turned around, however, without getting out of his car and drove back west on No. 1513. He and Helen Barfield were "sort of cross at each other." The accident which caused intestate's death occurred shortly before 8:00 at a point between two deep curves about ¼ mile from her home.

A little before 8:00 p.m., Tommy Faw, a witness for plaintiff, was traveling east on No. 1513. As he approached the first curve, he saw what he then thought, because of the position of its unmoving red light, to be a truck across the road. At that time he observed the lights of an unidentified, approaching automobile, traveling at approximately 30 MPH on its right side of the road. He recalled seeing only one set of headlights. It seems to Faw "that the car was pulling around this overturned car when (he) first saw the lights coming from the wreck." He never saw headlights behind the wreck. The unidentified car was on its way toward Faw, rounding the curve, when he first saw it "some-

where near the wrecked car." The moving car passed Faw and went on around the westernmost curve. Faw then went about 200 feet farther, to the place where the Caudill Ford was turned over on the south (intestate's left) side of the road. The Ford was lying on its right side with the engine facing south and its rear end 2-3 feet from the north side of the hard-surface, 16-18 feet wide. "The right side was bruised and the top." Intestate was coming from the back of the car by the top. Stooping forward, he walked toward the side ditch and fell in it. Faw asked intestate whether anybody was with him, and he said "No, I was by myself." Faw's next question was, "How did it happen? Did somebody hit you?" Intestate's reply was, "It just got away from me." By that time cars were beginning to stop. Faw dispatched one to call an ambulance and devoted his attention to intestate.

Early that night Hoyle Reeves picked up the Caudill Ford with his wrecker and hauled it to the storage lot back of his house three miles away. It remained there until the following Wednesday, when intestate's father pulled it to his home. At that time the father observed a tire mark on the right-hand side of the car between the door latch and the fender. The mark had not been there when intestate left home with the car on Sunday evening. On the left rear bumper there was also some dark paint which he had not theretofore observed.

On February 19, 1962, plaintiff gave defendant written notice that she was seeking to hold it liable under Endorsement #644 and enclosed an affidavit purporting to comply with paragraph II(d). She averred, *inter alia*:

> ". . . that while the said Donnie Caudill was operating said motor vehicle along said highway in a careful, prudent and lawful manner, the automobile was overtaken by another automobile. The identity of the operator of the other automobile or the owner of said automobile cannot be ascertained, the unidentified motor vehicle passing the motor vehicle operated by Donnie Caudill and forcing said motor vehicle off the highway onto the shoulder of the road and into the ditch, causing said motor vehicle to overturn as Donnie Caudill endeavored to bring said motor vehicle back onto the highway; that the said motor vehicle operated by Donnie Caudill overturned as a proximate cause *(sic)* of the negligent operation of the unidentified motor vehicle, causing Donnie Caudill to be thrown from the motor vehicle receiving injuries from which he later died; that the accident was duly reported and duly investigated by the North Carolina Highway Patrol and due notice was given to the insurance carrier, Nationwide Mutual Insurance Company, and payments were made under the medical-pay pro-

vision of said policy; that at the time of the accident and subsequent thereto, this affiant had no evidence that her son met his death as a result of the negligent operation of a hit-and-run automobile or an unidentified automobile; that this affiant received evidence of the unidentified or hit-and-run motor vehicle on January 30, 1962, as a result of having had her agent to confer with witnesses with regard to said accident. . . ."

Plaintiff introduced this affidavit into evidence without any objection by defendant or any request to limit its application.

Defendant's evidence tends to show: T. A. Miller, who had also been to the B. T. U. meeting, was riding around with his young cousin. He met intestate coming out of the dirt road to Helen Barfield's home as he went in. They both stopped, and intestate told Miller he was going back to the church. Miller then turned around and went back in that same direction. When he was 500 feet behind him, he saw the Ford turning over in the curve. It turned over more than once. No other car was meeting or passing. Miller helped intestate from his car and asked him whether he was "all right." When he said he thought he was, Miller told him he would go for help, and he went back to the church and had his parents get intestate's parents. Intestate died within the hour. Miller testified: "I didn't hit it (the Caudill Ford). I would be the unidentified driver if I had hit it."

Defendant's motions for judgment of nonsuit were overruled. The judge submitted, and the jury answered, issues as follows:

1. Did the plaintiff's intestate come to his death by the negligence of an unidentified driver of an unidentified automobile?

ANSWER: Yes.

2. If so, did plaintiff's intestate by his own negligence contribute to his death?

ANSWER: No.

3. Did the plaintiff comply with the insurance contract as to Notice?

ANSWER: Yes.

4. What amount, if any, is plaintiff entitled to recover of defendant?

ANSWER: $2,500.00.

From judgment entered on the verdict defendant appeals.

*McElwee & Hall and Moore and Rousseau for plaintiff appellee.*

*Hayes & Hayes for defendant appellant.*

SHARP, J.　Defendant's one assignment of error made in compliance with the rules of this Court, *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829, raises the question of the sufficiency of the evidence to withstand the motion for nonsuit. To recover under the contract of insurance upon which she sues, plaintiff must offer evidence from which the jury could find: (1) that the operator of a hit-and-run automobile, as defined by paragraph II(d) of Endorsement #644, caused bodily injury which resulted in her intestate's death; (2) that plaintiff, as intestate's personal representative, is *legally entitled* to recover damages as for his wrongful death from that operator (this requirement necessitates proof that the operator had breached a duty to intestate, which breach proximately caused his death); and (3) that plaintiff had duly filed with defendant, as required by Endorsement #644 or as permitted by law, a report of the accident and plaintiff's claim arising out of it. The failure to establish any one of these requirements would preclude recovery.

Apparently the theory of plaintiff's case is that the car which Faw met just before he reached intestate's wrecked Ford was operated by a hit-and-run motorist who had negligently passed intestate on his right, had run him off the road, and had caused him to turn over. Faw's testimony indicates that the automobile did pass intestate's Ford on the north side (intestate's right side) of the road. The inference from that testimony, however, is that the Caudill car had already been wrecked when the other car passed it. At any rate, Faw gave no testimony suggesting that he saw anything to indicate that it had forced the Caudill car off the road or had caused it to upset, or that it had come in contact with the Ford. Just how an overtaking motor vehicle, in passing the Caudill Ford, could have left a tire mark on the right side of the Ford between the door handle and the back fender without itself turning over is not apparent to us, and plaintiff makes no effort to explain such a phenomenon. According to the evidence, this tire mark was first observed three days after the accident, after the Ford had been pulled from the scene by a wrecker and after it had been stored in a wrecked-car lot. Under these circumstances the presence of such tire mark is no evidence that a hit-and-run motorist caused intestate to upset.

The car which met and passed Faw was operating normally at a speed of 30 MPH. The record does not suggest that the automobile of defendant's witness Miller showed any sign of contact with the Ford, much less that it, too, had been upset. From all the evidence, it is a fair inference that the car which Faw met was Miller's. In considering a motion for nonsuit, defendant's evidence which is not in conflict with

plaintiff's "may be used to explain, or make clear the evidence of the plaintiff." *Hopkins v. Comer,* 240 N.C. 143, 149, 81 S.E. 2d 368, 373; *accord, Jenkins v. Electric Co.,* 254 N.C. 553, 119 S.E. 2d 767; 4 Strong, N. C. Index, Trial § 21, n. 220 (1961 Ed.).

Plaintiff has offered the testimony of no witness and no physical evidence which tends to show that a hit-and-run automobile caused intestate's accident. Indeed, the testimony of Faw, the witness upon whom plaintiff relies to make out her case, is that intestate himself, when he made the statement that his own vehicle "got away from him," denied that any other vehicle was involved. Notwithstanding this, plaintiff contends that she was entitled to go to the jury on the basis of her affidavit filed with defendant some 80 days after the accident because — astonishing as it may seem — it was admitted into evidence without any objection from defendant's counsel.

The rule is, as plaintiff stressfully contends, that upon a motion for compulsory nonsuit the court must consider incompetent evidence which has been admitted without objection. *Bishop v. DuBose,* 252 N.C. 158, 113 S.E. 2d 309; *Kientz v. Carlton,* 245 N.C. 236, 96 S.E. 2d 14; *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316; *Holder v. Mfg. Co.,* 135 N.C. 392, 47 S.E. 481. Although such an item of evidence must be accorded its full probative force, *Ballard v. Ballard, supra* at 635, 55 S.E. 2d at 321, yet it is entitled to no more probative value than it would have had if it had been admissible under established rules of practice. 4 Jones, Evidence, § 984 (5th Ed. 1958). "The admission of such evidence, without objection, does not add any weight to it, if intrinsically it had none, and should have been excluded upon objection. Evidence does not have weight, because it is admitted; but it is admitted, because it deserves to have weight." *Sharp v. Baker,* 22 Tex. 306, 315. Whether, as a matter of law, incompetent evidence admitted without objection is entitled to be considered upon a motion for nonsuit is one question; whether, in fact, it has any probative value is another. The conclusion of a witness who has no personal knowledge of the facts is of no probative value. *Banty v. City of Sedalia,* Mo. App., 120 S.W. 2d 59; *Van Bibber v. Swift & Co.,* 286 Mo. 317, 228 S.W. 69; *Smith v. Lynn,* Tex. Civ. App., 152 S.W. 2d 838; *Sharp v. Baker, supra;* 32A C.J.S., Evidence § 1034 (1964).

The affidavit in question was made by one (plaintiff) who was not a witness to the accident nor was anywhere near the scene when it occurred. Obviously, without first-hand observation, she could not know whereof she speaks. In the affidavit she does not purport to reiterate an account of the accident made to her by one claiming to have been an eyewitness. Attempting to state ultimate facts which would bring her case within the coverage of Endorsement #644, she deposes as if she

herself had seen the accident. The record discloses, however, that her affidavit was based upon information given by her witness Faw to defendant's adjuster when he investigated plaintiff's claim for medical payments due under the policy. Defendant's cross-examination of Faw disclosed no material difference between that information and his testimony at the trial, which latter testimony is totally insufficient to support plaintiff's conclusions that the negligence of an unidentified driver forced intestate off the road and caused his death. It would indeed be an anomaly if, the testimony of a witness himself being insufficient to take a case to the jury, another's affidavit which was merely interpretative of that testimony could constitute evidence sufficient to overcome the motion for nonsuit. Plaintiff's own evidence discloses that the affidavit is without probative value on the first issue. Although admitted generally, at the close of plaintiff's evidence, without any request being made to restrict it, it is obvious that the affidavit was offered and admitted for the only purpose for which it was prepared, *i.e.*, to meet the requirements of paragraph II(d) with reference to notice of plaintiff's claim against defendant. *Clinard v. Trust Co., ante,* 247, 141 S.E. 2d 271.

Since defendant's motion for nonsuit should have been allowed because of plaintiff's failure to offer any evidence tending to show that negligence on the part of a hit-and-run motorist caused intestate's death (first issue), the question whether the affidavit met the requirements of the policy does not arise (third issue).

The judgment of the court below is

Reversed.