This is an action brought by plaintiff against defendants for conspiracy, alleging damage.
The complaint alleges, in substance, that the defendant Robert R. Reynolds is a resident of North Carolina and elected junior Senator from the State of North Carolina to the United States Senate. That the defendant Wesley E. MacDonald claims to be a resident and citizen of North Carolina, but in fact is a resident and citizen of the State of Virginia. That the Home Owners' Loan Corporation is a corporation existing under and by virtue of the law of the United States, with its principal office in Washington, D.C. That it maintains state and regional offices in the states of the Union. That T. C. Abernathy is the manager in North Carolina, with offices in Greensboro, N.C. That plaintiff, while in the offices of Robert R. Reynolds, talking to a party, was asked by the party where MacDonald was from. Plaintiff replied that MacDonald was from Virginia. Shortly afterwards MacDonald called plaintiff into a private office and remarked to plaintiff that he had almost gotten him into trouble. That plaintiff expressed surprise and begged to be informed as to the circumstances. MacDonald told him that he had overheard the conversation. Plaintiff told MacDonald that he was of the opinion and was informed that he was a resident and citizen of Virginia, but if misinformed he would gladly correct his *Page 273 
statement. MacDonald stated to plaintiff while he was born and reared in Virginia, that on his vacation he had acquired real estate and proposed to build a summer home, and that he had registered as a voter and from then on he proposed to hold himself out as a citizen and resident of North Carolina. To this method of acquiring citizenship and the privilege of voting in North Carolina, plaintiff warned MacDonald against, and called his attention to the laws of North Carolina requiring bona fide residence of one year before being eligible to vote. Attention was called to the criticism directed toward Senator Robert R. Reynolds for appointing as his secretary a nonresident, also the probable political reaction to Reynolds should his political enemies desire to make capital of the illegal registration of his secretary as a voter, and the possible criminal prosecution against MacDonald for making a false oath to his actually being a bona fide resident and his citizenship. Whereupon, MacDonald contended that his ownership of real estate in North Carolina gave him a right to vote and his registration was legal. That for no reason other than the fact that plaintiff refused to condone, agree and to so state that MacDonald was a resident and citizen of North Carolina, MacDonald, from time to time after the conversation before mentioned, changed his whole attitude towards plaintiff and in divers ways and means showed resentment of plaintiff's presence in or about the office of Senator Reynolds.
On 20 February, 1934, without notice, reason or cause, and without any explanation to plaintiff, the locks on the doors of the office, which plaintiff had at all times since his stay in Washington had keys, were changed. That in September, 1934, plaintiff was introduced by John H. Cathey, of Asheville, N.C. to one Harvey L. Jones, assistant to the general counsel of the Home Owners' Loan Corporation, and as a result plaintiff obtained a position with the corporation as traveling attorney, at a salary of $3,600 a year. While working for said corporation, in October, 1934, a lady from Winston-Salem, N.C. came to Washington to see if she could obtain a loan, was refused because of certain legal complications, and being unable to sufficiently explain the legal questions herself she wired her attorney, William Porter, at Winston-Salem to come to Washington. That plaintiff, after talking to Porter, also spoke to John H. Cathey, now assistant regional counsel for the Home Owners' Loan Corporation in Omaha, Neb., and one Harry L. Smith, now assistant regional counsel in Baltimore, Md. Both agreed with plaintiff that the loan was eligible and should be made. Plaintiff suggested to the attorney that he see Senator Robert R. Reynolds and ask him to take the matter up with the Loan Review Committee in Washington, to the end that the loan be sent to Washington for review by said committee. That William Porter went to the office of Robert R. *Page 274 
Reynolds to secure his help and assistance, and shortly thereafter returned and said that Reynolds was out of the city and would not be back for at least a week. On learning that Senator Reynolds had returned, plaintiff called him over the telephone and advised him of the matter and suggested to Reynolds that the matter be taken up with Wallace Walker, a member of the review committee, that possibly he could help the party save her home by obtaining a loan. That Reynolds asked plaintiff to write him a letter about it and he would take the matter up as suggested. That some time thereafter plaintiff had a letter from William Porter asking what, if anything, Reynolds had done, calling attention to the fact that his client was about to be ejected from her home. The letter reached plaintiff while on duty for the corporation in Charleston, West Virginia, and he forwarded the letter to Reynolds. A few days thereafter he received a letter from Reynolds stating that his secretary, MacDonald, had taken the matter up with a Mr. Penniman. That the day following the forwarding of the letter to Reynolds, with reference to MacDonald's action in writing Penniman, he (plaintiff) was called over the telephone by MacDonald and was threatened with serious results, both physical and otherwise. The seriousness and the means of punishment were to be determined upon on the return of Reynolds from a hospital in Baltimore. Soon thereafter plaintiff was ordered to duty in Charleston, West Virginia, for a few days and returned to Washington on 20 December, 1934. That on the morning of 21 December, 1934, by memorandum, he was ordered to report to W. T. Stockton, assistant general counsel for the Home Owners' Loan Corporation, at 2 o'clock p. m. That plaintiff went at the time and place mentioned, and upon arrival there met, along with Stockton, Col. Harvey L. Jones, assistant general counsel of the Home Owners' Loan Corporation, Mrs. Horace Russell, Wallace Walker, a member of the Loan Review Committee, and the party that he had suggested that Reynolds contact in the interest of the loan, and John W. Childress, assistant to the chairman of the board of the Home Owners' Loan Corporation. Thereupon, Stockton stated to plaintiff that he had evidence that tended to show that he had suggested to a member of Congress how he might bring pressure to bear on a member of the corporation, meaning, as he understood, Wallace Walker. He stated to Stockton that he supposed he had reference to the letter which he had in hand and the letter he had written to Senator Reynolds, which Stockton said was correct. He stated to Stockton that he had written the letter, but denied having any intention of making any suggestion as he referred to or that the letter was susceptible of any such construction. "8. But this plaintiff further avers and alleges that prior to the time of the meeting above referred to in the office of W. T. Stockton that the *Page 275 
defendants Robert R. Reynolds and Wesley E. MacDonald had wantonly, willfully, maliciously and unlawfully conspired, combined, confederated and agreed, for the purpose of injuring this plaintiff, and which did injure him to his great damage, to corruptly, wantonly, willfully, maliciously and unlawfully use the influence and prestige of his office as United States Senator to persuade certain officials of the Home Owners' Loan Corporation, to wit: John H. Fahey, chairman of the board above mentioned, and his assistant, John W. Childress, without cause and in total disregard of this plaintiff's rights or the effect on his character and professional reputation, to have or caused to have this plaintiff discharged from his position with said defendant Home Owners' Loan Corporation; that the said John H. Fahey and the said John W. Childress, as officers and employees of the Home Owners' Loan Corporation, yielded to the wanton, willful, malicious, and unlawful combine, conspiracy, confederation and agreement to influence and persuade them, and entering into said wanton, willful, malicious, and unlawful combine, conspiracy, confederation and agreement with the said defendants Robert R. Reynolds and Wesley E. MacDonald, at their solicitation and persuasion, and for the purpose of injuring this plaintiff, as above stated, did wantonly, willfully, maliciously, and unlawfully have or cause to have this plaintiff discharged from his position as above stated, and to his great damage.
"9. That notwithstanding the fact that this plaintiff was able to do, and was doing, as he is informed, advised and believes, the work for which he was employed by the defendant Home Owners' Loan Corporation, and notwithstanding the fact that his record was good and that he was rendering satisfactory service in his position as a member of the legal division of the Home Owners' Loan Corporation, which said record and satisfactory service was, as he is informed and believes, mentioned and certified to in his behalf by his superiors in the legal division, this plaintiff avers and alleges that, yielding to the influence and persuasion and thereby entering into same with the defendants Robert R. Reynolds and Wesley E. MacDonald, in furtherance of their wanton, willful, malicious and unlawful combine, conspiracy, confederation and agreement to injure this plaintiff as above stated, the said John H. Fahey and John W. Childress, as officers and agents of the defendant Home Owners' Loan Corporation, and while acting as officers and agents of said defendant corporation, did force this plaintiff, against his will and under threats to discharge upon his failure to do so, to resign his position as traveling attorney, as aforesaid, and thereby deprive him of his position and its attendant salary, thereby denying him the right to earn a livelihood and to support and maintain his family as in law and in right he was under obligation to do and to his great damage. *Page 276 
"10. That at the conclusion of the meeting in the office of W. T. Stockton, as above mentioned, this plaintiff was instructed to report to Col. Harvey L. Jones within one hour; that the plaintiff did report to the said Harvey L. Jones as instructed to do so, and was told by the said Harvey L. Jones to come back the following morning; that upon reporting the following morning, as he had been instructed, this plaintiff was informed by the said Harvey L. Jones that due to the plaintiff's good record as a member of the legal division that it had been decided to permit this plaintiff to resign, but that upon his failure to resign plaintiff would be discharged. That thereupon this plaintiff tendered his resignation, effective 31 December, 1934.
"11. That this plaintiff was forced to resign or take the alternative of being discharged as hereinbefore alleged, not because of any wrong he had done or any act of his toward any person or official of the defendant Home Owners' Loan Corporation, but solely because of the wanton, willful, malicious, and unlawful conduct of the defendants Robert R. Reynolds and Wesley E. MacDonald, and the corrupt and unlawful use of his office as United States Senator in inducing and persuading the officers and agents of the said Home Owners' Loan Corporation to have this plaintiff dismissed and expelled from his position as aforesaid; that this plaintiff had made a good record with said defendant corporation and was well liked by his superiors in the legal division as well as other members of the same. That after this plaintiff's connection with the said Home Owners' Loan Corporation had terminated, as above mentioned, he applied for a position with the litigation division of the National Recovery Administration. That in filing his application he gave as reference of his ability as an attorney his former superiors in the Home Owners' Loan Corporation.
"That this plaintiff was appointed a member of the legal division of the Home Owners' Loan Corporation on 14 September, 1934, at a salary of $3,600 per year and expenses while away from the city of Washington and on duty for said corporation; that, as hereinbefore alleged, this plaintiff had a good record as an attorney, with good chances of promotion and increase of salary, and this plaintiff avers and alleges that had it not been for the wanton, willful, malicious, and unlawful conduct of the defendants, as hereinbefore alleged, he would have held his position for at least two years and perhaps longer. That after his connection with said Home Owners' Loan Corporation, as above set forth, this plaintiff, as he was in law and equity compelled to do, used all reasonable efforts to secure other employment; that after the termination of his services with the Home Owners' Loan Corporation on 31 December, 1934, he secured, as hereinbefore alleged, a position with the litigation division of the National Recovery Administration on 8 *Page 277 
February, 1935, at a salary of $3,600 a year and expenses; that shortly thereafter, to wit, he was transferred and assigned to the regional office of the National Recovery Administration at Atlanta, Ga.; that on 10 June, 1935, after the invalidation of the National Recovery Act by the Supreme Court, he returned to Washington and, because the reason for his employment had ceased, his connection with the National Recovery Administration terminated on 15 July, 1935. That thereafter for several months he used every possible means to secure further employment but was unable to do so. That by reason of the wanton, willful, malicious, and unlawful combine, conspiracy, confederation and agreement of the defendants, hereinbefore set forth, this plaintiff has been damaged by loss of salary in the sum of $6,653.35. That the acts and conduct of the defendants, as hereinbefore alleged, were wanton, willful, malicious, and unlawful, without justification in law or in fact; that they were done for the purpose of injuring this plaintiff, and which did injure him as aforesaid; that the defendants Robert R. Reynolds and Wesley E. MacDonald are insolvent and any monetary judgment against them by way of punitive damages would be worthless and of no account. Wherefore, this plaintiff prays judgment against the defendants in the sum of $6,653.35; for cost, and for such other and further relief as he may be entitled. That as to the defendants Robert R. Reynolds and Wesley E. MacDonald, this plaintiff prays judgment as in arrest and bail for any and all amounts found to be due him, for in that, as hereinbefore alleged, the acts of the defendants were wanton, willful, malicious, and unlawful."
The defendants entered a demurrer as follows: "The defendants Robert R. Reynolds and Wesley E. MacDonald demur to the plaintiff's complaint filed in this action on 31 December, 1936, and as grounds for their demurrer they say: (1) That the complaint does not state a cause of action because the plaintiff alleges in the complaint that he resigned his position with the Home Owners' Loan Corporation, effective 31 December, 1934, and in that the complaint does not allege that the plaintiff was discharged by the Home Owners' Loan Corporation, his employer. (2) That the complaint does not state a cause of action because nowhere in the complaint is it alleged that the plaintiff was appointed for any particular period of time, that he had any tenure of office whatever, or that he held his office other than at the will of the proper officers of the Home Owners' Loan Corporation. (3) That the complaint does not state a cause of action because that plaintiff alleges in the complaint that, while holding the position of attorney with the Home Owners' Loan Corporation, he wrote a letter to a member of the United States Senate to secure his help and assistance, and to get the United States Senator to take up with a member of the Loan Review *Page 278 
Committee the matter of making a loan to an applicant whose loan had been denied in the regular course of business by the corporation, thereby showing that the plaintiff gave the officers of the Home Owners' Loan Corporation adequate reasons for requesting his resignation. Wherefore, the defendants pray that this action be dismissed, and that the defendants go without day and recover their costs of the plaintiff."
The judgment in the court below is as follows: "This cause coming on for hearing before the undersigned judge presiding at the May Term of the Superior Court of Davie County, upon the complaint of the plaintiff and the written demurrer and the demurrer ore tenus filed thereto. Whereupon, after hearing the oral arguments of counsel, it was agreed that the court might take with him the record in the cause and determine and decide the case outside of Davie County or outside of the Seventeenth Judicial District. It is now, therefore, upon a careful consideration of the record, the oral arguments, and the briefs filed by the parties plaintiff and defendants, considered and adjudged that the written demurrer and the demurrer oretenus be and they are now overruled and disallowed. Done at Chambers in Wilkesboro, Wilkes County, North Carolina, as of the May Term, 1937, of the Superior Court of Davie County. This 10 June, 1937.
 FELIX E. ALLEY, Judge Presiding."
The defendants excepted and assigned error to the judgment as signed and overruling the demurrer of defendants, and appealed to the Supreme Court.
In the Supreme Court the following demurrer ore tenus to the complaint was filed: "Upon the call of the case for argument upon the written demurrer, the defendants demur ore tenus, upon the additional ground: That the complaint does not state a cause of action, in that the communication which forms the basis of the alleged cause of action was privileged as a matter of law, and on the further ground that the substantial facts properly alleged in the complaint do not constitute a cause of action."
"Now come the defendants, and in addition to the grounds for demurrer appearing in the record they demur ore tenus on the following grounds, and say that the courts of the State of North Carolina do not have jurisdiction of this action for the reason that it appears from the complaint that the defendant Robert R. Reynolds is an officer of the United States, to wit, a member of the Senate of the United States, and that the defendant Wesley E. MacDonald is an officer or employee of the United States, to wit, secretary to the defendant Robert R. Reynolds as a member of the Senate of the United States; and further, that the *Page 279 
alleged acts of the defendants complained of were done in connection with, or in the discharge of, the duties of the defendants in their respective offices. Wherefore, the defendants pray that the action be dismissed for the additional reasons herein stated."
We think the demurrer of defendants should have been sustained on the ground that "the complaint does not state facts sufficient to constitute a cause of action." N.C. Code, 1935 (Michie), sec. 511 (6).
C. S., 535 is as follows: "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties."
In Blackmore v. Winders, 144 N.C. 212 (215-16), speaking to the subject we find: "The uniform rule prevailing under our present system is that, for the purpose of ascertaining the meaning and determining the effect of a pleading, its allegations shall be liberally construed, with a view to substantial justice between the parties. Revisal, sec. 495 (C. S., 535). This does not mean that a pleading shall be construed to say what it does not, but that if it can be seen from its general scope that a party has a cause of action or defense, though imperfectly alleged, the fact that it has not been stated with technical accuracy or precision will not be so taken against him as to deprive him of it. Buie v. Brown, 104 N.C. 335. As a corollary of this rule, therefore, it may be said that a complaint cannot be overthrown by a demurrer unless it be wholly insufficient. If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn, or however uncertain, defective or redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader. It must be fatally defective before it will be rejected as insufficient," citing numerous authorities. N.C. Prac. Proc. in Civil Cases (McIntosh), sec. 443, p. 454; Fairbanks, Morse Co. v. Murdock Co., 207 N.C. 348 (351).
In Manning v. R. R., 188 N.C. 648 (663), citing a wealth of authorities, it is said: "A demurrer is the formal mode of disputing the sufficiency in law of the pleading to which it pertains. It admits only such averments as are well pleaded and such inferences as may be drawn therefrom, but it does not admit any legal inferences or conclusions of law that may be alleged. We must therefore refer to the complaint in *Page 280 
order to determine the scope and effect of the defendants' admissions."Conrad v. Board of Education, 190 N.C. 389 (393); Distributing Corp. v.Maxwell, Comr. of Revenue, 209 N.C. 47 (48).
The language in Harley Lund Corp. v. Murray Rubber Co., 31 F.2d 932
(934-5), is pertinent to the complaint in this action: "Much, indeed, has been written about the admissible latitude in pleadings sounding in `conspiracy.' There is, however, no more reason why a pleader in such actions should not definitely commit himself to the facts on which he means to stand than elsewhere; indeed there is vastly less. The notion that it is enough vaguely to charge defendants with `conspiracy,' garnished with such adverbs as `maliciously' and `wrongfully,' has done more to bewitch the whole subject than anything else. Whether, if the plaintiff at bar is properly confined, any substance will not evaporate with the rhetoric, we do not find it necessary now to decide."
The complaint is bottomed on conspiracy, alleging damage. In S. v.Martin, 191 N.C. 404 (406), we find: "A conspiracy has been defined to be `an engagement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way.' S. v. Dalton, 168 N.C. 204. A conspiracy has been further defined as a `combination among two or more persons to accomplish, by concerted action, an unlawful purpose, or a purpose not in itself unlawful, by unlawful means. But whether it is a wrongful or illegal conspiracy depends not upon the name given by the pleader, but upon the quality of the acts charged to have been committed. If these acts are not wrongful or illegal, no agreement to commit them can properly be called an illegal and wrongful conspiracy.' Ballentine v.Cummings, 70 A. 548, . . . (p. 407). However, the proof must be sufficient to create more than a suspicion. Testimony that raises no more than a suspicion is not sufficient to be submitted to a jury as evidence of guilt. Perry v. Ins. Co., 137 N.C. 404. The principle is thus stated inBrown v. Kinsey, 81 N.C. 245: `The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the court will not leave the issue to be passed on by the jury.' Sutton v. Madre, 47 N.C. 320; Liquor Co. v. Johnson, 161 N.C. 77;Seagroves v. Winston, 167 N.C. 207; S. v. Bridgers, 172 N.C. 882;S. v. Prince, 182 N.C. 790."
In R. C. L., Vol. 15, part sec. 29, p. 68, is the following: "In a leading English case it seems to have been taken for granted by all the judges, affirmative and dissentient, that if the defendant has used a means that could be denominated unlawful in order to bring about an employee's discharge he would be liable. As this represents the general *Page 281 
doctrine it becomes necessary to consider what specific means or modes of interference with a man in his trade or calling can be said to be unlawful. The most obviously unlawful of all means is of course violence. As a general proposition any interference with the free exercise of another's trade or occupation or means of livelihood by preventing people by force, threats, or intimidation from trading with, working for, or continuing him in their employment, is an actionable wrong."
The long and verbose complaint of plaintiff indulges in generalities and conclusions: That defendants had prior thereto conspired "to persuade certain officials of the Home Owners' Loan Corporation" to cause plaintiff to be discharged, using "the influence and prestige of his office as United States Senator" for such purpose. Par. 9. ". . . That yielding to the influence and persuasion and thereby entering into same with the defendants Robert R. Reynolds and Wesley E. MacDonald, in furtherance of their wanton, willful, malicious, and unlawful combine, conspiracy, confederation and agreement to injure this plaintiff, as above stated, the said John H. Fahey and John W. Childress, as officers and agents of the defendant Home Owners' Loan Corporation, and while acting as officers and agents of said defendant corporation did force this plaintiff, against his will, and under threats of discharge upon his failure to do so, to resign his position as traveling attorney. . . ." Par. 12: That but for the conspiracy and resulting resignation plaintiff "would have held his position for at least two years and perhaps longer." The complaint does not allege any tenure of office whatever. Except for redundant use of the words "wrongfully, maliciously, wantonly, and unlawfully," the nearest to an allegation of fact as to defendants appears in paragraph 8: ". . . that the defendants . . . had conspired . . . to use the influence and prestige of his office as U.S. Senator to persuade certain officials of Home Owners' Loan Corporation . . . to have this plaintiff discharged," and as a result thereof plaintiff resigned a position to which he alleges no tenure of office and no term of employment.
The complaint shows lack of discretion on plaintiff's part in writing a letter to a United States Senator attempting to get him to use the influence of his position to cause the review committee of the Home Owners' Loan Corporation to make a loan which had been denied. This attempt to go over the heads of the executive officers of the Home Owners' Loan Corporation, the complaint clearly shows, was the reason plaintiff's resignation was demanded. The letter is not set out in the complaint, but it was the outcome of an appeal by plaintiff himself to Senator Reynolds over the telephone, who requested a letter to him stating the facts. This letter was turned over to the Home Owners' Loan Corporation by Senator Reynolds to aid the plaintiff in getting *Page 282 
the loan. It was the individual act of Reynolds, no semblance of any conspiracy with MacDonald. The Home Owners' Loan Corporation took offense at plaintiff's letter — hence the request for his resignation.
The whole complaint indicates that the controversy was between plaintiff and Senator Robert R. Reynolds' secretary, Wesley E. MacDonald, and not with Reynolds. Plaintiff was not discharged, he resigned. No violence or such a threat or intimidation which was sufficient in law to show that the resignation was not the voluntary act of plaintiff. He gave as reference in his application for another position his former superiors in the Home Owners' Loan Corporation. He stayed with the government until the Congressional Act (N. R. A.) under which he was employed was declared unconstitutional by the Supreme Court of the United States.
The use in the complaint of the words "That the defendants Robert R. Reynolds and Wesley E. MacDonald had wantonly, willfully, maliciously, and unlawfully conspired, combined, confederated, and agreed for the purpose of injuring the plaintiff and which did injure him, to his great damage," etc., is a conclusion of the pleader, and there are not sufficient facts alleged in the complaint to sustain the allegations that there was a conspiracy between Reynolds and MacDonald to injure plaintiff, causing damage. The allegations show a mere conjecture, suspicion or guess, which has no probative force.
Where two defendants were indicted for conspiracy, the court properly instructed that the jury must find either both guilty or both not guilty.S. v. Lewis, 185 N.C. 640. Conspiracy, not its execution, is the offense.S. v. Lea, 203 N.C. 13; certiorari to U.S. Supreme Court denied,287 U.S. 649, 77 L.Ed., 561.
It goes without saying that the complaint is wholly insufficient to show anything done by the Home Owners' Loan Corporation to hold it for conspiracy if it, being a governmental agency, could be held on a conspiracy charge.
It has been frequently held that an employee who resigns has no cause of action against his employer for wrongful discharge. The plaintiff was suijuris and voluntarily resigned his position. The allegations in the complaint are not sufficient to charge duress. The conclusion of the pleader is not sufficient. The complaint clearly indicates that plaintiff was an employee at will, with the right of his employer to discharge him at any time. In fact, he alleges, "This plaintiff was forced to resign or take the alternative of being discharged," etc. A threat to do what one has a legal right to do cannot constitute duress. 13 C. J., 399; Smithwick v.Whitley, 152 N.C. 369; Bank v. Smith, 193 N.C. 141; Randolph v. Lewis,196 N.C. 51.
The pleading alleges no tenure of office. In Richardson v. R. R.,126 N.C. 100 (101), we find: "The engineers have a right to quit *Page 283 
whenever they get ready, and the company has a right to discharge any engineer at any time without cause. But upon the plaintiff's own showing, his discharge was within the right of the defendant, and not wrongful, and malice disconnected with the infringement of a legal right cannot be the subject of an action." Holder v. Mfg. Co., 138 N.C. 308.
The Home Owners' Loan Corporation was a governmental agency and Reynolds a United States Senator. How far the conduct of Senator Reynolds was privileged we are not called upon to say. In Spalding v. Vilas,161 U.S. 780, it was held: "The head of an executive department cannot be held liable to a civil suit for damages on account of official communications made by him pursuant to an act of Congress and in respect of matters within his authority, by reason of any personal or even malicious motive that might be alleged to have prompted his action."
In Newell Slander and Libel (4th Ed.), sec. 445, p. 482, it is written: "Criticism of the official conduct of a public officer is always a proper subject for public discussion and information, and a communication made in good faith for the purpose of redressing some injury or to prevent or punish a public abuse is privileged, if addressed to a person or board having an interest or duty in the matter, or jurisdiction to entertain the complaint or redress the grievance. Residents of a place may petition the mayor and aldermen to revoke the license of a merchant, or may petition the board of excise protesting against the licensing of a tavern, and their communications will be privileged. This privilege, however, must not be abused, for, if such communication be made maliciously and without probable cause, the pretense under which it is made, instead of furnishing a defense, will aggravate the case of the defendant." S. v. Publishing Co.,179 N.C. 720.
On the plaintiff's complaint, liberally construed, it is wholly insufficient to show a conspiracy between the defendants causing damage to plaintiff. In the broad aspect of the complaint it would indicate a quarrel between, as it seems, two former friends — the plaintiff and defendant MacDonald, secretary to Senator Reynolds — as to whether MacDonald was a resident and citizen of Virginia and had become a bona fide
resident of North Carolina. The language of both in this regard became heated and acrimonious. The aftermath, in regard to overriding the review committee of the Home Owners' Loan Corporation on the loan which plaintiff was trying to obtain for another, is a different matter. The telephone conversation of plaintiff, in which he appealed to Senator Reynolds, was about the loan. A new and distinct matter. Reynolds requested plaintiff to write him about the matter. The letter was not attached to or set out in the complaint. Plaintiff's letter to Senator Reynolds reached the Home Owners' Loan Corporation, *Page 284 
the officers of which seem to have taken offense at same, bringing about plaintiff's resignation without legal duress. There is nothing in the pleadings except a conclusion that plaintiff did not hold his position at will. There is no direct or circumstantial allegation in the complaint to show any conspiracy between Senator Reynolds and his secretary, MacDonald, to injure plaintiff. The allegations in the pleadings, "their wanton, willful, malicious, and unlawful combine, conspiracy, confederation, and agreement to injure this plaintiff," etc., are not borne out by the long details of the pleadings, and were merely conclusions of the pleader and not considered on a demurrer.
On the pleadings the demurrer must be sustained and the judgment of the court below
Reversed.