**Lee E. HURST, Plaintiff,**

**v.**

**STONE & WEBSTER SERVICE CORPORATION, Defendant.**

United States District Court
S. D. New York.

May 4, 1956.

Jackson, Nash, Brophy, Barringer & Brooks, New York City, for plaintiff.

Hale & Dorr, Boston, Mass., Mudge, Stern, Baldwin & Todd, New York City (James D. St. Clair, Boston, Mass., of counsel), for defendant.

THOMAS F. MURPHY, District Judge.

Over two years ago the defendant moved for summary judgment in this action originally commenced in the District of Massachusetts and removed here pursuant to 1404(a) of Title 28. The motion was not heard until April 26, 1956, because lengthy depositions were being taken in the interim to be used on this motion.

The action is based on diverse citizenship, the plaintiff being a citizen of North Carolina, the defendant a New York corporation, and is one for the unlawful interference with the contract the plaintiff had with the Piedmont Natural Gas Company, Inc.

The complaint alleges in substance that plaintiff was hired as president of the Piedmont Company in 1951 partly on the recommendation of defendant which in turn was retained by the Piedmont Company to render advisory and consultant services to it and to assist in a program whereby the Piedmont Company proposed to convert its customers' facilities from the use of manufactured gas to the use of natural gas and in this connection undertook and agreed to assist the Piedmont Company in obtaining necessary financing for the cost of the change-over.

It is further alleged that defendant's failure to deliver the necessary pipe for the completion of the change-over operation resulted in unanticipated expenses to the Piedmont Company which forced it to seek additional financing. Then, according to plaintiff, defendant blamed Piedmont's losses on plaintiff and requested Piedmont to discharge him for improperly performing his duties as president and wrongfully threatening that if Piedmont did not discharge him it would refuse to assist Piedmont in obtaining additional financing which it desperately needed. Accordingly Piedmont yielded to such threats and requested plaintiff's resignation.

The Piedmont Company has its principal place of business in North Carolina and plaintiff performed his functions as president in that state. Prior to becoming president of the Piedmont Company plaintiff was associated with defendant as an employee and it was on defendant's recommendation that he became Piedmont's president and a member of its board of directors.

The parties are agreed that the cause of action arose and is governed by the applicable law of North Carolina.

There seems to be no dispute that plaintiff's oral contract as president of the Piedmont Company was terminable at the will of the Piedmont board of directors. There is no dispute also that the contract that the defendant had with Piedmont was to render consultant and advisory services to Piedmont in connection with all matters incident to the operations and business of the company and could be terminated by either party on 30 days' notice. It is also undisputed that plaintiff submitted his resignation as president, director and member of the executive committee of the Piedmont Company on July 24, 1952, at a meeting of the board of directors held in North

Carolina and that his resignation was accepted at that time and place. After his resignation he was replaced on defendant's payroll for approximately six months.

The principal issue of fact relates to the alleged threats of defendant to Piedmont, the plaintiff maintaining that defendant through its Mr. Clifford told the executive committee of Piedmont that unless they got rid of him the defendant would wash its hands of the whole thing and by washing its hands of the whole thing meant that defendant would disassociate itself from Piedmont and withdraw its support, thus affecting the anticipated financing. Defendant categorically denies these statements.

Defendant's argument on this motion for summary judgment is to the effect that (a) plaintiff's employment was terminated by his resignation and under the applicable North Carolina law plaintiff has no right of action; (b) plaintiff's employment was terminable at the will of the Piedmont Company; (c) defendant by reason of its advisory service contract with the Piedmont Company had a legal right (if not a positive obligation) to press as vigorously as it deemed proper for plaintiff's removal as president of the Piedmont Company and no right of action could be based thereon; (d) that contrary to the allegations of the complaint defendant did not threaten to withhold assistance in obtaining financing for the Piedmont Company unless plaintiff was discharged and (e) even if such allegations are assumed to be true they are completely without legal significance insofar as they purport to allege the procurement of plaintiff's discharge by the use of "unlawful means."

At the time of making the motion two years ago defendant relied heavily on the cases of Holder v. Cannon Mfg. Co., 138 N.C. 308, 50 S.E. 681 and Kirby v. Reynolds, 212 N.C. 271, 193 S.E. 412.

However, since that time the Supreme Court of North Carolina in Childress v. Abeles, 240 N.C. 667, 84 S.E.2d 176, 181, has authoritatively reviewed the nature of the tort where an outsider intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party. Although not in explicit terms it would appear that the earlier cases of Holder v. Cannon and Kirby v. Reynolds have been overruled or if not overruled considerably weakened. Childress outlines the essential elements of the wrong as follows: *"First,* that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. * * *" This the plaintiff had. *"Second,* that the outsider had knowledge of the plaintiff's contract with the third person. * * *" This is conceded. *"Third,* that the outsider intentionally induced the third person not to perform his contract with the plaintiff. * * *" Defendant says that for the purpose of this motion we can assume it to be true. *"Fourth,* that in so doing the outsider acted without justification. * * *" *"Fifth,* that the outsider's act caused the plaintiff actual damages. * * *"

In analyzing the issues here created it would appear that the only one in dispute is the *Fourth* element, viz., "that in so doing the outsider acted without justification." In the instant case assuming, as defendant has asked us to do, the plaintiff's statement to be true the question to be resolved is whether defendant had justification to do what the plaintiff says it did.

According to plaintiff's deposition he has testified that the defendant told Piedmont that unless it got rid of him it would wash its hands of the whole thing, i. e., it would terminate its contract for advisory services and withdraw its support thus seriously affecting the anticipated financing. The reason for this, according to plaintiff's complaint (paragraph 10), was "in order to cover up its own defaults and miscalculations." If this was the reason it was not justifiable. Childress tells us that "the outsider acts without justification in inducing the breach of contract within the purview of the fourth element of the tort if he has no

sufficient lawful *reason* for his conduct." If we assume defendant's sole reason was to make plaintiff the scapegoat obviously defendant cannot be justified. If, however, as defendant says in its affidavits, it made no such charge and had no such reason then that creates an issue of fact to be tried by a jury and summary judgment must accordingly be denied.

Settle order.