J. F. COWELL v. PHOENIX INSURANCE CO.

(Decided May 29, 1900.)

*Fire Insurance—Statute of Frauds—Building on Leased Land—Notice—Sale of Building Without the Land.*

1. Real estate may be sold by parol and one title is good between the parties unless the Statute of Frauds is invoked as a defence—strangers to the transaction cannot avail themselves of the statute.

2. A building on leased land may be insured, with notice to the company, notwithstanding a stipulation to the contrary in the policy.

3. By consent between the contracting parties the land-owner can sell a house by parol and convert it into personal property by such contract.

CIVIL ACTION to recover the amount of a fire insurance policy, tried before *Starbuck, J.,* at Fall Term, 1899, of PAMLICO County.

The defense was that the plaintiff was not the owner of the house insured, and burned, and had concealed that fact from the company. The jury rendered a verdict in favor of plaintiff, and judgment was rendered accordingly. Defendant appealed. The opinion states the facts in evidence.

*Messrs. Simmons, Pou & Ward,* for appellant.
*Mr. W. W. Clark,* for appellee.

FAIRCLOTH, C. J. This is an action to recover the amount of a fire insurance policy. The defendant issued the policy to the plaintiff on a dwelling house, household furniture and other personal property. Policy issued May 24, 1898, and the property was destroyed by fire November 21, 1898. These facts are admitted. The defense is that the plaintiff

was not the sole and unconditional owner of the house when it was insured nor when it was burnt; that the plaintiff concealed the fact that he was not the owner of the land on which the house was situated and failed to disclose the true ownership thereof, and that the policy was therefore void, according to the terms of the policy.

The defendant introduced in evidence the record of an action instituted in 1896, styled *Daniels v. Fowler et al.,* from which it appeared that S. H. Fowler had made an assignment of his property to one Baxter, who conveyed the same to C. H. Fowler, with an allegation that said assignment was fraudulent and void—that said suit continued until Spring Term, 1898, when the verdict and judgment declared said assignment to be void, and that the plaintiff Daniels and others were the owners of the property in controversy. The plaintiff here was a party to the action of *Daniels v. Fowler.*

The defendant offered other evidence showing that plaintiff and said C. H. Fowler were in business in a shop on said lot of land, that it was moved about fifty feet on said lot and made to front another street and separated from the balance of the lot, and was converted by improvements and additions into a dwelling house by plaintiff, and occupied by him as a residence until the fire. This is the insured house now the subject of this action.

Plaintiff's evidence: J. F. Cowell testified that: "The burned building was formerly used as bar room; outside was of rough boards. I bought the house of C. H. Fowler in 1894. There was no deed. Paid him $100. (Defendant objected to the statement that he bought the house in 1894, on the ground that the sale would have to be in writing. Overruled, and defendant excepted.) I moved it to another part of the same lot. It cost me $1,000 to rebuild it. I leased the land which it was moved on from C. H. Fowler. I

had no notice of any fraud at the time I made the purchase. I leased the land a year from each January in 1894, when I moved the building. I leased it with the understanding that it was to be renewed each January as long as C. H. Fowler and I remained partners in the store business. I first leased it in 1894, when I moved the building. I would say I rented it each January 1. It was understood that the lease should be to January 1, 1895, and should be renewed each successive January as long as Fowler and I remained in business together. It was renewed each January by the previous agreement made in 1894. I gave my time to the business. I was to have one-half the profits and also possession of the lot fenced in about the dwelling as long as we remained in business. I understood I was holding it under lease made in 1894."

Cross-examined: "Were you holding at the time of the fire in 1898, under the parol lease made in 1894?" Answer. "I was holding under this lease with the understanding that it was to be renewed from year to year as long as our partnership lasted. The partnership was renewed each year after 1894 till we went out of business after the fire. We renewed the partnership about January 1, each year, and it was understood that the lease was renewed each year as the partnership was renewed. Nothing was said about the rest of the business each January." The plaintiff further testified that he did not know whether this was the second or third annual policy he had taken out on the property in this company. It was admitted here that at the time the policy was issued, the defendant had notice that the plaintiff claimed that the building was on leased ground.

The plaintiff's application attached to the policy is: "On *his* two-story shingle-roof frame building and additions * * * , on leased land." The clause in the policy relied

on by the defendant, among other things, is: "The entire policy shall be void if the interest of the assured be other than unconditional and sole ownership; or if the subject of the insurance be a building on ground not owned by the insured in fee simple, *unless otherwise provided by agreement endorsed hereon or added hereto.*"

Real estate may be sold by parol and the title is good as between the parties unless the statute of frauds is invoked and relied on as a defense, but strangers to the transaction can not avail themselves of the statute. "Buildings which are sold without the land on which they stand, with the intention of all parties to sever them from the land, pass to purchaser, with a right to remove them as personal property within a reasonable time." *Shaw v. Carbrey,* 95 Mass., 462. The first exception therefore can not be sustained.

An insurance policy issued with full notice (as was the case in this instance) to the company that the building insured stands upon leased ground is not invalidated by a provision that it shall be void if the subject thereof is on ground not owned by the assured in fee simple. *Baldwin v. Insurance Co.,* 15 N. Y. Supp., 587; 39 N. Y., State Rep., 752, and S. P. 60 Hun., 389.

The defendant's prayer was if the jury believed the evidence they should answer the first issue "No," and the second "Nothing." This prayer was refused, and his Honor instructed the jury that if they believed the facts as to the lease to be as stated by the plaintiff, Cowell, in his testimony, they should answer the first issue "Yes," and the second issue "$1,000." With our view of the law, we see no error in overruling these prayers and exceptions. There was no evidence in conflict with that of the plaintiff, and the Judge made no mistake in allowing the jury to act on the plaintiff's evidence.

What cause of complaint has the defendant company? The defendant insured a dwelling house with notice that it stood on leased ground; and what is the difference to the defendant whether it stood on the ground of A or B? Knowledge in that particular could neither increase nor diminish the risk of the company. It was immaterial to the defendant whether the land belonged to Fowler or to Daniels. The defendant simply insured the house as "his," plaintiff's property, knowing that the plaintiff had no fee in the estate.

In the argument, the case was put upon the legal proposition that the land-owner could not sell the house by parol and convert it into personal property by such contract. We have shown this can be done by consent of the contracting parties, and we think the defendant has no interest in that question.

Our conclusion as to the law seems to lead to a just result. Finding no error in the trial, the judgment of the court below must be

·Affirmed.