### J. A. BIGGERS v. N. S. MATTHEWS.

#### (Filed 8 April, 1908).

1. **Contracts, Executory—Personal Employment to Cut Timber— Vested Interest.**

   An executory contract made by the owner of land, by which another person is to cut the timber on a stipulated piece, is a contract of personal employment, vesting no interest in the land or the standing timber in the employee.

2. **Contracts—Standing Timber—Sale to Third Person—Breach— Compensatory Damages.**

   For a breach of such contract on the part of the owner of the land, by selling it to a third person, such owner is liable for compensatory damages. The purchaser takes title to the land, with the standing timber, free from any right or claim of the person with whom the contract to cut was made, and is not liable to him for damages sustained by reason of the purchase.

3. **Same—Liability of Third Person.**

   The fact that A purchased land with standing timber thereon from B, who had contracted with C to cut the timber, with knowledge of such contract, for the purpose of preventing the timber from being cut, does not render him liable to C for damages sustained by reason of the breach of the contract made by the owner with C. By purchasing the land he incurred no liability for the breach of the personal contract made by the owner with C.

ACTION tried before *Jones, J.,* and a jury, at February Term, 1908, of UNION.

Plaintiff appealed. The facts are stated in the opinion.

BIGGERS *v.* MATTHEWS.

.· *A. M. Stack* for plaintiff.

*Robinson & Caudle, Stevens & Love* and *Williams & Lem-mond* for defendant.

CONNOR, J.   The pleadings disclose this case:  The defendant, Matthews, on 22 December, 1905, entered into a contract in writing with Gordon & Smith, which, as contended by plaintiff, may be interpreted to constitute a sale of certain standing timber on his land at the price and upon the terms set forth therein.   Plaintiff, on 3 January, 1906, contracted with Gordon & Smith to saw the timber into lumber, receiving as compensation therefor 30 cents per hundred feet.   Pursuant to the terms of his contract, plaintiff carried his sawmill, engine and boiler to defendant's land, upon which the timber was standing, and began to saw it into lumber.   Defendant, on 5 February, 1906, after the plaintiff had carried his mill to the land and begun sawing, having knowledge of plaintiff's contract with Gordon & Smith, took an assignment from Gordon of his interest in the timber and forbade plaintiff sawing the same into lumber.   His purpose in taking said assignment from Gordon was to prevent plaintiff from continuing to saw the timber and performing his contract.   Defendant, on 13 September, 1906, sued Smith and obtained from the court an injunction restraining him and his employees from sawing said timber.   Plaintiff was not a party to this action.   Plaintiff alleges that defendant took said assignment and sued out said injunction for the purpose of preventing him from sawing the timber under his contract with Gordon & Smith.   The foregoing are the material facts in the case.   His Honor, being of the opinion that upon the pleadings plaintiff was not entitled to maintain the action against defendant for damages sustained by reason of the breach of contract, rendered judgment for defendant, to which plaintiff excepted and appealed.   While it is not clear, it may be, for the purpose of disposing of this appeal, conceded, as contended by plaintiff, that the contract between Gordon,

Smith and defendant constituted a sale of the timber, to be paid for at the price named as it was cut. Plaintiff acquired no title to or interest in the timber by his contract with Gordon & Smith. The agreement between them was an executory contract in the nature of an employment, whereby plaintiff was to saw the timber and receive as compensation 30 cents per hundred feet. A similar contract to cut cord wood was considered by us in *Ives v. Railroad Co.*, 142 N. C., 131. *Mr. Justice Walker* (at p. 134) said: "The contract was not for the sale of standing trees, but  *  *  *  for the conversion of trees growing on defendant's land into cord wood and the delivery of the same on the defendant's right of way. It was not contemplated by the parties that there should be a transfer of any title to or interest in the trees as they stood upon the land." We can perceive no reason why Gordon could not assign and the defendant purchase his interest in the timber, free from any liability on the part of defendant to carry out Gordon's executory contract with plaintiff. It was a personal obligation on the part of Gordon, and not a covenant running with his title to the timber. He did not assign the contract with plaintiff, but the timber. We can perceive no difference as to the principle involved between this case and one in which the owner of a lot had contracted with a builder to erect a house thereon and thereafter sold the lot, or one in which the owner of a farm had contracted with a superintendent for a year and during the time sold the farm. In neither case does the purchaser come into any contractual relation with or obligation to the person with whom the owner has contracted. For any damages sustained by the builder or the superintendent by the sale of the property the owner with whom he contracted is liable. If the owner has made a lease or granted an easement, or made a covenant real which runs with the land, the purchaser takes the title *cum onere* and, of course, is liable for a disturbance or breach, as the case may be. What the liability of defendant would be to

plaintiff if Gordon had assigned his contract with plaintiff is not presented. Plaintiff says, however this may be, defendant took the assignment from Gordon for that purpose and with the intent to prevent him from sawing the timber, and relies upon *Haskins v. Royster,* 70 N. C., 601, to sustain his action. There the plaintiff alleges that defendant unlawfully enticed and persuaded his servants to leave his employment. *Rodman, J.,* says: "We take it to be a settled principle of law that if one contracts upon a consideration to render personal service for another, any third person who maliciously—that is, without a lawful justification—induces the party who contracted to render the service to refuse to do so is liable to the injured party in action for damages." *Jones v. Stanly,* 76 N. C., 355. One who has entered into a contract of service would have the same right of action against a person who under similar conditions procured his discharge. This is elementary, but not applicable to the facts set out in the complaint. The defendant in the case cited maliciously, without any lawful justification, interfered with the plaintiff's contractual rights. Here the defendant purchased Gordon's interest in the timber, but it is not charged that he did so from malicious motive, but willfully and intentionally. If a person does that which he has a legal right to do, violating no legal duty or obligation, the motive which prompts him is immaterial. Conceding that defendant did not wish the timber cut and sawed into lumber, and repurchased from Gordon to prevent it, we are unable to see how he violated any legal duty or did any actionable wrong to plaintiff. He was under no obligation to permit him to saw it. He did not by purchasing come into any contractual relation with plaintiff. We do not perceive that the case differs in principle from one in which the owner of a lot finds that an adjacent owner has made a contract with a builder to erect a house, to which he objects, and for the purpose of preventing the erection of the house purchases the lot and forbids the builder from proceed-

ing with the work. He has committed no actionable wrong. The one who after making the contract sells the lot, thereby preventing the builder from performing his contract and making his profit, is liable for breach of his contract. If the defendant had the legal right as against plaintiff to buy from Gordon, his purpose is irrelevant. In *Richardson v. Railroad,* 126 N. C., 100, *Clark, J.,* says: "But upon plaintiff's own showing his discharge was within the right of the defendant and not wrongful, and malice disconnected with the infringement of a legal right cannot be the subject of an action." *Judge Black,* in *Jenkins v. Fowler,* 24 Pa., 308, says: "Malicious motive makes a bad act worse, but it cannot make that wrong which in its own essence is lawful.   *   *   * Any transaction which would be lawful and proper if the parties were friends cannot be made the foundation of an action merely because they happen to be enemies. As long as a man keeps himself within the law by doing no act which violates it, we must leave his motives to Him who searches the heart." "An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent." In Cooley on Torts, 93, the author says: "That the exercise by one man of his legal right cannot be a legal wrong to another is a truism." *Ib.,* 830; *Mogul Steamship Co. v. McGregor,* 23 Q. B. D., 612; *Allen v. Flood,* L. R. A. C., 1. We think it clear that no cause of action is stated in respect to the assignment by Gordon to defendant. The fact that he had made the original contract does not affect his right to take the assignment. It seems that for some reason, which the court deemed sufficient, the present defendant enjoined Smith, his employees and agents from cutting the timber. While plaintiff was not a party to that action and therefore not estopped by the judgment, his right to saw the timber was dependent upon Smith's title, and if Smith had violated his contract or otherwise forfeited his interest in the timber plaintiff cannot sue defendant for damages. He must look to Smith, with whom he contracted.

Plaintiff assumes that Gordon & Smith assigned to him some interest in the timber and that the assignment by Gordon to defendant was subject to such assignment to him. The fallacy in the argument is just here. As we have undertaken to show, plaintiff took no interest in the timber, but had only an executory contract to saw it for Gordon & Smith. While he is not estopped by the injunction order, he is prevented, as an employee of Smith, from sawing it. He was not a necessary party to that action. His right to sue ceased when the court enjoined Smith, *his employees and agents.* There are many averments regarding defendant's motives, etc., but when we eliminate them and get to the real facts we do not find any violation of a legal duty or an unlawful interference with plaintiff's legal right by defendant. Calling his conduct unlawful does not make it so. Upon a careful examination of the entire record we concur in the judgment rendered by the court. There is

No Error.