### WILSON v. FIREMAN'S FUND INS. CO.
### (No. 1255.)

(Court of Civil Appeals of Texas. Beaumont. June 16, 1925. Rehearing Denied June 24, 1925.)

1. **Insurance ⬅282(1)—Sole ownership clause not contrary to public policy and binding on insured.**

Provision in policy that it is void, if interest of insured in property is other than unconditional and sole ownership, does not contravene public policy and is binding on insured.

2. **Insurance ⬅282(7)—Purchaser of property under voidable mortgage foreclosure sale held entitled to recover against insurer for destruction thereof notwithstanding sole ownership clause.**

Insured, who acquired title to property under mortgage foreclosure sale, which was not absolutely void, but only voidable because not in strict compliance with a power given under mortgage, *held* entitled to recover for the destruction of property, notwithstanding sole ownership clause therein.

3. **Insurance ⬅282(7)—Insurer cannot question insured's title to insured property, in absence of fraud or bad faith on part of insured.**

Even though title acquired by insured under mortgage foreclosure sale was absolutely void, in absence of fraud or bad faith on his part as against interest of insurer, the latter could not question his title under sole ownership clause in policy.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by J. W. Wilson against the Fireman's Fund Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

W. H. Graham, of Dallas, for appellant. Thompson, Knight, Baker & Harris, of Dallas, for appellee.

WALKER, J. On the 10th day of April, 1919, A. G. Fullerton, A. W. Thornley, and J. E. Scott executed a trust agreement, organizing the Community Mill & Elevator Company, naming themselves as trustees under the terms of this agreement, and vesting in themselves and their successors in office, as such trustees, the title to all the trust property, with power to manage and control the same. Without quoting from the terms of this trust agreement, it is clear that it did not create a pure trust, but constituted its stockholders partners, as held by this court in Nini v. Cravens & Cage Company, 253 S. W. 582, and authorities therein cited. The Community Mill & Elevator Company owned a two-story frame building situated upon certain leased premises and held by it under conditions constituting the building personal property. On the 6th day of January, 1920, A. G. Fullerton, one of the trustees, loaned the Community Mill & Elevator Company $2,000, which was secured by the following valid chattel mortgage:

"The State of Texas, County of Dallas.

"The Community Mill & Elevator Company, an unincorporated trust association, as more fully shown by its declaration of trust duly recorded in the records of such instruments in Dallas county, Texas, for the purpose of securing that certain indebtedness, in the sum of two thousand ($2,000.00) dollars, owing by said company to A. G. Fullerton, of the city and county of Dallas, state of Texas, which indebtedness is evidenced by a certain promissory note of even date herewith, in the principal sum of two thousand ($2,000.00) dollars, executed by the Community Mill & Elevator Company, and payable to the order of A. G. Fullerton, at Dallas, Texas, due April 1st, A. D. 1920, bearing interest at the rate of eight per cent. (8%) per annum from maturity until paid, and providing for 10% additional on the principal and interest due as attorney's fees, if placed in the hands of an attorney for collection, does hereby sell and mortgage unto the said A. G. Fullerton and his assigns, the following described personal property now in the possession of said company, to wit:

"'All that certain two-story frame building, known as a mill elevator building, situated upon the following described lot, tract or parcel of land, in or near the town of Wilmer, Dallas county, Texas; said lot, tract or parcel of land being more particularly described as follows:

"'Beginning at a point on the west line of a road running north and south, the east boundary of said lot, thence north parallel with the right of way of the H. & T. C. Ry. Co., 50 ft.; thence west 136 ft. more or less, to the east line of the right of way of the H. & T. C. Ry. Co.; thence south with said east line of the right of way of the H. & T. C. Ry. Co., 50 ft.; thence east 136 ft. more or less, to the place of beginning.'

"Owned entirely by the said Community Mill & Elevator Company, without any incumbrances thereon: Provided, that if the said the Community Mill & Elevator Company shall pay, or

cause to be paid, the said indebtedness, then this chattel mortgage shall be void.

"And the said the Community Mill & Elevator Company hereby stipulates that if default be made by it in the payment of said debt, or any part thereof, or if any attempt be made to dispose of, or remove, said property from Dallas county, or 'from the place where it is now situated, or if at any time the payee of said note, or the holder thereof, shall deem the said debt unsafe or insecure, the said A. G. Fullerton or his assigns are hereby authorized to enter upon the premises where the said property may be, and sell the same, where it is situated, at public auction, or private sale, with or without further notice, and out of the proceeds retain the amount then owing. on said debt, with expenses attending the same, rendering to the Community Mill & Elevator Company, or its successors or assigns, the surplus, after the whole of said debt shall have been paid, with the charges aforesaid. ,

"Witness the signature of the Community Mill & Elevator Company, this the 6th day of January, A. D. 1920.

"Community Mill & Elev. Co.,
"By A. W. Thornley, Trustee,
"Secy. Treasurer.

"J. E. Scott, Trustee.
"A. G. Fullerton, Trustee.
"A. W. Thornley, Trustee."

This note not being paid when due, Fullerton undertook to foreclose the mortgage by executing the power of sale given him therein. In doing this, he sold the property, through his attorney; he not being present at the sale. Thereupon the following bill of sale was executed and delivered to him:

"The State of Texas, County of Dallas.

"Whereas, on January 6, 1920, The Community Mill & Elevator Company, acting by and through its duly elected, qualified and acting trustees, executed a note in favor of A. G. Fullerton, for the principal sum of $2,000.00 dated January 6, 1920, due April 1, 1920, bearing interest at the rate of 8% per annum from date until paid, and delivered said note to the said A. G. Fullerton, and to secure the payment of said note, said The Community Mill & Elevator Company likewise acting through its trustees as aforesaid, executed and delivered to the said A. G. Fullerton, said company's chattel mortgage in favor of said A. G. Fullerton, dated January 6, 1920, conveying to the said A. G. Fullerton, the following described property. viz.:

"All that certain two-story frame building known as a mill elevator building, situated upon the following described lot, tract or parcel of land in or near the town of Wilmer, Dallas county, Texas, said lot, tract or parcel of land being more particularly described as follows:

"Beginning at a point on the west line of a road running north and south, the east boundary of said'lot; thence north parallel with the right of way of the H. & T. C. Ry. Co., 50 feet; thence west 136 feet more or less, to the east line of the right of way of the H. & T. C. Ry. Co.; thence south with said east line of the right of way of the H. & T. C. Ry. Co. 50 feet; thence east 136 feet more or less, to the place of beginning, owned entirely by the Community Mill & Elevator Company.

274 S.W.—12

"Said conveyance, however, being to secure the payment of said note; and

"Whereas, said mortgage, among other things, provides: And the said Community Mill & Elevator Company hereby authorizes that if default be made by it in the payment of said debt or any part thereof, or if any attempt be made to dispose of or remove said property from Dallas county, or from the place where it is now situated, or if at any time the payee of said note or the holder thereof, shall deem the said debt unsafe or insecure, the said A. G. Fullerton or his assigns, are hereby authorized to enter upon the premises where the said property may be and sell the same where it is situated, by public auction or private sale, with or without further notice, and out of the proceeds, retain the amount then owing on said debt with expense attending the same and render to the Community Mill & Elevator Company, or its successors or assigns, the surplus after the whole of said debt shall have been paid, with the charges aforesaid; and

"Whereas, on October 11, 1920, the said A. G. Fullerton gave notice that he would sell said property at the courthouse door of Dallas county, Texas, between the hours of ten o'clock a. m. and four o'clock p. m. on October 30, 1920, at public auction to the highest and best bidder for cash, one copy of which notice was posted at the courthouse door in Dallas county, and one copy thereof posted at each of two other public places in Dallas county, all for a period of more than ten days prior to said October 30, 1920, and one copy of which notice was published in the Weekly Tribune, a newspaper published in the English language in Dallas county, Texas, on October 15, 22 and 29, 1920; and

"Whereas, on the 30th day of October, 1920, at 10:45 o'clock a. m. at the courthouse door in Dallas county, Texas, I offered said property for sale at public auction to the highest and best bidder for cash and there being no one who bid on said property save and except the said A. G. Fullerton, the said A. G. Fullerton bid the sum of $2,000.00 for said building and has credited the same upon the debt held by him as aforesaid:

"Now therefore, in consideration of the premises and under and by virtue of the power vested in me by said mortgage and in pursuance of notice given as aforesaid, I, the said A. G. Fullerton, have this day and do by these presents, sell, transfer, and deliver unto myself the said A. G. Fullerton all of the right, title and interest and ownership of the said Community Mill & Elevator Company in and to the aforesaid building located as aforesaid, and here now credit the sum of $2,000.00 upon the obligation of the Community Mill & Elevator Company to A. G. Fullerton as aforesaid.

"Witness my hand at Dallas, Texas, this the 1st day of November, 1920.
"[Signed] A. G. Fullerton."

The property was sold at the courthouse door of Dallas county, instead of the place named in the mortgage, and it was not shown affirmatively that due notice of the sale was given. After the sale, Fullerton took possession of the property, claiming it as his own. Neither of the other trustees ever questioned the regularity of the sale, nor

did any one of the other of the stockholders in the trust. At the time Fullerton loaned the Community Mill & Elevator Company the $2,000, at the time the mortgage was executed, and at the time the property was sold, Fullerton owned stock in the company. The sum of $2,000 bid by Fullerton for the property was its reasonable cash value, and there was no suggestion of fraud or bad faith by Fullerton or his attorney in their efforts to foreclose the mortgage. At the time the property was sold, the company was insolvent. After the sale, and after Fullerton had taken possession of the property, he insured it with appellee for the sum of $1,500. Shortly afterwards, and while the policy was in full force and effect, the building burned. Proofs of loss were duly filed with appellee, and no question being made as to the value of the property, appellee refused payment. After the loss, Fullerton assigned his claim under the policy to appellant, J. W. Wilson, who tried the case on his first amended original petition, wherein he pleaded as plaintiff against appellee as defendant. By due allegations, appellant set forth in his petition a cause of action on the policy issued by appellee to Fullerton. Appellee answered by general and special demurrers, a general denial, and by specially pleading the following condition of the policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured in the property be other than unconditional and sole ownership."

On a trial to the court without a jury, the special defense of appellee was sustained, and judgment entered in its favor.

### Opinion.

[1, 2] The provision of the policy specially pleaded by appellee was in all things binding upon appellant. It has often been held that this provision does not contravene a sound public policy, and being a proper subject of contract should be given effect. The only question before us is its proper construction. There is nothing in this provision of the policy that warrants the title under which the insured held. It makes no representation as to the validity of the insured's title. The insured must hold under a title, and under his title he must be the sole and unconditional owner of the insured property. That is all that is meant by this condition of the policy. Here the insured did hold and was in peaceful possession, under a title that vested in him unconditional and sole ownership. It was said in Miller v. Alliance Ins. Co. (C. C.) 7 F. 650:

"It is also insisted for the defendant that the court erred upon the trial in excluding evidence offered for the purpose of showing that the insured had a defective title to the real estate upon which the insured buildings stood. The policy provides that if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the insured, \* * * it must be so represented and expressed in the written part of the policy, otherwise the policy to be void. * * * The defendant's offer of proof was, therefore, nothing more than a proposition to show that the plaintiff, although he had a title to the mill property which apparently vested in him the sole, unconditional, and entire ownership of the property, had a defective title. The condition of the policy refers to the extent of the insurable interest of the plaintiff, and not to the validity of his title."

Discussing the same question, the Supreme Court of Pennsylvania said, in Livingstone v. Boston Insurance Co. 255 Pa. 4, 99 A. 213:

"The provisions of an insurance policy are construed favorably to the assured; and, where he has an insurable interest and is the substantial owner of the property so that the entire loss falls on him, it satisfies the above-quoted clause as to ownership, although he may not have a perfect legal title to the insured property."

The general principles upon which the condition pleaded by appellee is construed are thus stated by 26 C. J. 173:

"If insured has, under claim of right, the exclusive use and enjoyment of the entire estate in the property, without assertion of adverse title by another, his interest is properly described as sole and unconditional (Atlas F. Ins. Co. v. Malone, 99 Ark. 428, 138 S. W. 962, Ann. Cas. 1913B, 210; Enyeart v. Farmers F. Ins. Co., 65 Pa. Super. 425), although his title may be defective (Miller v. Alliance Ins. Co., 7 F. 649, 19 Blatchf. 308; American Basket Co. v. Farmville Ins. Co., 1 F. Cas. No. 290, 3 Hughes, 251; Travis v. Continental Ins. Co., 47 Mo. A. 482; Livingstone v. Boston Ins. Co., 255 Pa. 1, 99 A. 212; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149, 4 A. 8; Watertown F. Ins. Co. v. Simons, 96 Pa. 520). So a husband in a bona fide possession of personalty under a parol gift from his wife may take insurance thereon as sole and unconditional owner, although the gift is invalid because not in writing (Davis v. Iowa State Ins. Co., 67 Iowa, 494, 25 N. W. 745; Collins v. St. Paul F. & M. Ins. Co., 44 Minn. 440, 46 N. W. 906; Burson v. Philadelphia Fire Assoc., 136 Pa. 282, 20 A. 401, 20 Am. S. R. 919). And since a conveyance in fraud of the grantor's creditors is valid as between the parties, the grantee's interest is sole and unconditional (Phœnix Ins. Co. v. Mitchell, 67 Ill. 43; Groce v. Phœnix Ins. Co., 94 Miss. 201, 48 So. 298, 22 L. R. A. [N. S.] 732; Steinmeyer v. Steinmeyer, 64 S. C. 413, 42 S. E. 184, 92 Am. S. R. 809, 59 L. R. A. 319). And the same rule applies to a grantee holding under a parol conveyance, since the statute of frauds can be invoked only by the parties to the transaction. Cowell v. Phœnix Ins. Co., 126 N. C. 684, 36 S. E. 184. See generally Frauds, Statute of, 20 Cyc. 306."

This general rule is immediately qualified as follows:

"But neither naked possession nor claim under a sale void for want of jurisdiction confers absolute and unconditional ownership within the meaning of an insurance policy. Porter v. Ætna Ins. Co., 19 F. Cas. No. 11286, 2 Flipp. 100."

The sale under which Fullerton claimed was not absolutely void, but only voidable. It must be admitted that he had the power to make the sale, and the defects in his title urged by appellee arose out of a defective effort upon the part of Fullerton to execute the power given him under his mortgage. The effect of such a sale and the rights of the mortgagor are thus stated by 11 C. J. 716:

"Where the provisions of the statute or mortgage as to sale are not substantially complied with and have not been waived, the mortgagor is entitled to have the value of the property applied to the mortgage debt, and, if the value exceeds the debt, to recover the difference from the mortgagee; and if the property is wrongfully sold at private sale the measure of damages is the difference between the price realized and the actual value of the property, or the excess of the value of the property above the mortgage debt. But it has been held that in those jurisdictions in which the mortgagee is regarded as having an absolute legal title after default and possession taken, and in which the procedure at law and in equity is distinct, the mortgagor's only remedy for a wrongful foreclosure sale is by a bill in equity for redemption with an accounting for the reasonable value of the property if it is injured or destroyed or is for any reason unavailable for redemption. So, where the mortgagee is rightfully in possession, he cannot, while the mortgage remains unredeemed, be charged as for a conversion by reason of any irregularity in the subsequent proceeding for sale."

It is clear that the title of Fullerton does not come within the qualification made to the general rule, supra. If such a sale is merely voidable, then appellee had no right to question the sufficiency of appellant's title, even apart from the general principles first above discussed. Only the Community Mill & Elevator Company or its assigns could question the title held under the sale by Fullerton. This it did not do.

[3] But apart from all that has just been said, even if the title held by Fullerton was absolutely void, in the absence of fraud or bad faith on his part as against the interests of appellee, his title could not be questioned by appellee. We think appellee occupies the position of "a stranger," as discussed by Chief Justice Brown in Spivy v. March, 105 Tex. 473, 151 S. W. 1037, 45 L. R. A. (N. S.) 1109, wherein he said, discussing the right of a stranger to question the sufficiency of a married woman's defective acknowledgment:

"It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense, but we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley and her heirs have construed it by their inaction for a half century. If a stranger to the title be permitted to make such objection, courts should cast upon him the burden of establishing the invalidity.

"We have in this case by the decision of the Court of Civil Appeals a stranger setting up a defect which the vendor refused to assert. The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character."

It follows from what we have said that appellant should have had judgment for the amount sued for. It is, accordingly, our order that the judgment of the trial court be reversed and judgment here rendered in favor of appellant for the sum of $1,500, with 6 per cent. interest thereon from maturity of the policy.

Reversed and rendered.