SID P. CHILDRESS v. MURRAY J. ABELES AND CLARENCE A. TROUTMAN, T/A UNIVERSAL COMPANY.

(Filed 13 October, 1954.)

**1. Contracts § 1—**

The right to make contracts is both a liberty and a property right.

**2. Contracts § 26—**

An action in tort lies against an outsider who knowingly, intentionally, and unjustifiably induces one party to a contract to breach it to the damage of the other party.

**3. Contracts § 27—**

In an action to recover compensatory damages for wrongfully inducing a third person to breach his contract with plaintiff, plaintiff must show: (1) that a contract existed between him and a third person which conferred upon plaintiff some contractual right against the third person; (2) that defendant had knowledge of plaintiff's contract with such third person; (3) that defendant intentionally induced the third person not to perform his contract with plaintiff; (4) that in so doing the defendant acted without justification; and (5) that defendant's acts caused plaintiff actual damages.

**4. Contracts § 26—**

A stranger to a contract may be held liable for wrongfully inducing one of the parties to breach the agreement if he knows the facts which give rise to the plaintiff's contractual right, even though he may be mistaken as to the legal significance of those facts, or believes there is no contract, or believes that the contract means something other than what it is judicially held to mean.

**5. Same—**

A stranger to a contract who wrongfully induces one of the parties to breach same may be held liable even though he is not actuated by actual malice in the sense of personal hatred, ill will, or spite, it being sufficient if he acts without justification, *i.e.*, intentionally without lawful excuse or reason, which constitutes legal malice.

**6. Torts § 1—**

A malicious motive makes a bad act worse, but it cannot make that wrong which, in its own essence, is lawful.

**7. Contracts § 27—**

In an action against a third person for wrongfully inducing a party to a contract to breach same, malice is ordinarily material only upon the question of punitive damages.

**8. Contracts § 26—**

While actual malice is not an element of a cause of action for wrongfully inducing the breach of a contract, it may negative the existence of justification in a particular case, since a person is never justified in inducing the breach of a contract solely for the purpose of venting personal hatred, ill will, or spite.

**9. Pleadings § 15—**

Upon demurrer, a pleading will be liberally construed with every reasonable intendment and presumption in favor of the pleader.

**10. Contracts § 27—**

The allegations of the complaint as amended *held* sufficient to state a cause of action against defendants for wrongfully inducing a third person to breach his contract with plaintiff, and defendants' demurrer *ore tenus* was properly overruled.

**11. Contracts § 26—**

A person is justified in interfering in a contract between two other persons if he is in competition with one of them.

**12. Contracts § 27—**

In this action to recover for wrongful interference with contractual rights by defendant, a stranger to the contract, plaintiff's evidence was to the effect that he was not acting in competition with defendants. Defendants offered evidence *contra*. *Held:* Nonsuit on the ground that defendants were justified in interfering with the contract because plaintiff was acting in competition with them was properly denied, and the conflicting contentions were properly submitted to the jury.

**13. Contracts §§ 5, 27—Execution of one contract may be consideration for another.**

Plaintiff's evidence was to the effect that defendants were desirous of purchasing certain furniture cabinets, that plaintiff brought defendants together with a furniture manufacturer, and that defendants purchased the cabinets from the manufacturer with the understanding that the manufacturer should pay plaintiff commissions on all cabinets thereafter purchased by defendants under the continuing contract. *Held:* The contract for the purchase of the cabinets was sufficient consideration for the manufacturer's agreement to pay plaintiff commissions, and in plaintiff's action against defendants for wrongfully inducing the manufacturer to breach the contract to pay commissions, defendants are not entitled to nonsuit on the ground that the contract for commissions was void because not supported by consideration.

**14. Contracts § 26—**

The fact that a contract between two parties is terminable at the will of either does not make it terminable at the will of a third person, and is not a defense in an action by one of the parties to the contract against such third person for wrongfully inducing the other party to the contract to breach same.

**15. Contracts § 6—**

The law does not favor the destruction of contracts on the ground of indefiniteness and uncertainty.

**16. Same: Contracts § 26—**

An agreement by the seller to pay to plaintiff commissions at a fixed rate on all sales made under a contract with a certain purchaser will not be declared void for indefiniteness or uncertainty, even though the agreement be terminable at will.

**17. Frauds, Statute of, § 1—**

The defense of the statute of frauds is personal to the parties to a contract, and is not available to strangers to the agreement.

**18. Same: Contracts § 27—**

In this action against strangers to a contract for wrongfully inducing one of the parties to the agreement to breach same, defendants set up the defense that the contract was entered into in the State of Georgia and that under the laws of that State the contract was unenforceable because not in writing. *Held:* The defense of the statute of frauds, both under the laws of this State and the laws of the State of Georgia, is not available to defendants, who are strangers to the agreement.

**19. Contracts § 27—**

In an action for wrongfully inducing one of the parties to a contract to breach same, the fact that plaintiff may have a right of action on the contract against the other party to the agreement, is no defense.

**20. Appeal and Error § 39c—**

Where the jury does not award plaintiff punitive damages, the exclusion of the defendants' evidence tending to show absence of actual malice cannot be prejudicial.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Sharp, Special Judge,* November Term 1953, (High Point Division) of GUILFORD.

Civil action to recover compensatory and punitive damages upon the alleged ground that the defendants wrongfully and with actual malice interfered with a contract which plaintiff had with the Trogdon Furniture Company for the payment of commissions on merchandise manufactured and sold by that company to defendants.

The parts of the Complaint and Amended Complaint essential for a decision are summarized: *One,* sometime in February 1949 the defendants requested the plaintiff to secure the manufacture of certain television stands and cabinets of a certain type, quality and quantity for them by one of the plaintiff's customers, to which he agreed, on condition that he secured a satisfactory commission from the manufacturer on all sales of such goods made to the defendants. *Two,* thereafter plaintiff contacted the Trogdon Furniture Company of Toccoa, Ga., and the said furniture company, after several conferences with plaintiff, agreed to manufacture for the defendants such television cabinets and stands as the defendants would require, and to pay the plaintiff an 8% commission on all such sales to defendants. *Three,* the plaintiff then in company with the defendants went to Toccoa, Ga., and the defendants and the Trogdon Furniture Company entered into a contract whereby the furniture company would manufacture and sell to the defendants such television cabinets and stands as the defendants required, and in the presence of each of the

defendants, the Trogdon Furniture Company agreed with plaintiff to pay him an 8% commission on all such sales made by them thereafter to defendants. *Four,* pursuant to such contract the Trogdon Furniture Company manufactured and sold to the defendants during March and April 1949, $9,207.00 of television cabinets and stands, and paid to the plaintiff commissions thereon of 8% amounting to $736.56. In May 1949 plaintiff and the furniture company by mutual agreement modified their agreement so that plaintiff should be paid by it commissions of 4% ; in May 1949 the Trogdon Furniture Company made and sold to defendants $8,868.50 of such cabinets and stands, and paid to plaintiff 8% commissions on sales of $6,214.50 and 4% commissions on sales of $2,654.00—the commissions amounting to $603.32. During June, July, August, and a part of September 1949 the Trogdon Furniture Company continued to pay the plaintiff his commissions on sales made by them to defendants. *Five,* in August 1949 a dispute arose between the plaintiff and the defendants with reference to another transaction between them, the plaintiff contending the defendants owed him $256.00. This controversy had no connection with the plaintiff's or defendants' contract with the Trogdon Furniture Company. This controversy resulted in the plaintiff instituting a civil action against the defendants to recover $256.00. The summons in said action were issued on 9 September 1949. The action ended in the defendants paying to plaintiff $256.00. *Six,* the defendants became vexed at the plaintiff because of the dispute over the $256.00, and told him if he persisted in his attempts to collect it, they would cost him thousands of dollars. In a brief time after the plaintiff instituted action to recover the $256.00, the defendants notified the Trogdon Furniture Company to cease paying commissions to plaintiff on the sales the furniture company was making or would make to the defendants, and that they, the defendants, would cease to do business with the furniture company if it did not *immediately* discontinue the payment of commissions to plaintiff. That at this time the Trogdon Furniture Company had already manufactured and stored in its warehouse a large quantity of television cabinets and stands especially for the order of defendants. That as a result of such action on defendants' part the Trogdon Furniture Company has not thereafter paid any commissions to plaintiff, although a large sum has accrued to the plaintiff by way of commissions on television cabinets and stands manufactured and sold by the furniture company to defendants. *Seven,* the action of the defendants in demanding that the Trogdon Furniture Company cease payment of such commissions to plaintiff was an interference with the contractual relations between plaintiff and the Trogdon Furniture Company without any justification and excuse, and was malicious, wilful, wanton and reckless, and done for the purpose of gratifying the defendants' feelings of resentment

and rage towards the plaintiff for instituting action against them to recover $256.00; that the defendants wrongfully, unlawfully and maliciously persuaded, induced and coerced the Trogdon Furniture Company to breach its contract with plaintiff in order to vent their spleen and malice against plaintiff. *Eight,* that the plaintiff alleges, upon information and belief, that the Trogdon Furniture Company from September 1949 to the commencement of this action has manufactured and sold to the defendants television cabinets and stands in the approximate amount of $500,000.00, and he prays that he have and recover from the defendants $20,000.00 as compensatory damages, and $10,000.00 as punitive damages. During the trial plaintiff was allowed to amend his complaint so as to pray that he recover $17,860.00 as compensatory damages.

The plaintiff introduced in evidence competent evidence in support of the allegations of his Complaint and Amended Complaint. We do not deem it necessary to summarize all of plaintiff's evidence, but we do summarize certain parts of it, which tends to show these facts: In the early part of 1949 plaintiff had a conversation with the defendants relative to procuring a contract from a manufacturer to make television cabinets and stands for them, and at that time Mr. Abeles, one of the defendants, said to plaintiff, if he could secure a manufacturer to make these goods for them "I'll see that you get commissions, and I'll not interfere in your commissions in any way." At the time the Trogdon Furniture Company made this contract with the defendants, the Trogdon Furniture Company also made a contract with plaintiff to pay him 8% commissions on the merchandise manufactured and sold by it to the defendants. When negotiations were initiated between the defendants and the furniture company, the defendants said the furniture company was to pay commissions to plaintiff. The contract was executed on 19 March 1949. In May 1949 the defendants wanted goods of a different style or design. The furniture company told the defendants it could not make them for the price they offered to pay, unless the plaintiff's commissions were reduced. The furniture company saw plaintiff, and he agreed to reduce his commissions to 4%, whereupon the new design was manufactured. In the late summer or early fall of 1949 the furniture company stopped paying commissions to plaintiff, because of a letter received from the defendants. This letter dated 22 July 1949 reads in part: Plaintiff's "concern and the Universal Company have reached a parting of the ways as he has attempted to go into competition with us. We have had other disagreements with Mr. Childress over his methods, and, so far as we are concerned, this is the last straw . . . For this reason we must decline to do any further business with you through Mr. Childress." From 1 October 1949 to 1 November 1950 the Trogdon Furniture Company manufactured and sold to the defendants $446,500.00 of television cabinets and

stands—4% commission on this amount is $17,860.00. As a result of this letter the furniture company did not make a new agreement with the defendants; it worked along as it had been. On 15 July 1949 defendants placed a substantial order with the furniture company, and at the end of the order wrote: "No commission is due to any one on this order, and is given in this manner." The plaintiff never competed in business with the defendants. The furniture company has not paid to plaintiff any commissions on the sales of $446,500.00, and the plaintiff has made no demand on it for such payment. The furniture company told the defendants it felt it was duty bound to pay plaintiff commissions on all their orders manufactured before receipt of their letter to stop paying commissions to plaintiff, and the defendants said "that would be all right," and such commissions were paid. Ray Trogdon testified the agreement between the furniture company and plaintiff was personal as its employee, and it felt at liberty to terminate it at any time; that there is no doubt that plaintiff brought the furniture company and the defendants in contact, as he had not known defendants until the plaintiff introduced them to him. On direct examination plaintiff testified in 1949 he developed a dispute with defendants over $256.00 they owed him on a transaction not connected with the Trogdon Furniture Company; that this went on several months; that he told defendants: "I'm going to have to sue you, because you owe me $256.00, and I'm going to have it." Both defendants were present and Murray Abeles replied: "If you sue me, I'll knock you out of thousands of dollars worth of commissions." Shortly after plaintiff put the claim into the hands of a lawyer to collect, his commissions from the Trogdon Furniture Company stopped. Action was brought, and defendants paid him the $256.00—plaintiff paying the costs. On cross-examination plaintiff testified he put this claim in the hands of a lawyer to collect 9 September 1949. On re-direct examination he testified he placed this claim in the lawyer's hands "May or June, I think."

On cross-examination the defendant Troutman said: "I would say the controversy about the $256.00 arose even back in March 1949."

Plaintiff's evidence tends to show that he had no access to the designs of the various articles of merchandise that the Trogdon Furniture Company was manufacturing for defendants.

On cross-examination the plaintiff testified in substance as follows: He attended the furniture show in New York in July 1949. He went to the Tele-King Corporation to buy a television set wholesale. He knew this company had been a customer of the defendants. He did not know the defendants had sold this company goods manufactured by the Trogdon Furniture Company. He never heard of the defendants making cabinets. The president of the Tele-King Corporation gave him blue prints of its cabinets, and asked him if he could get the cabinets made for it. Ray

Trogdon was in New York, and he asked him did he want to make cabinets for Tele-King Corporation, and he replied No. Plaintiff never tried to get any one to make Tele-King cabinets for him, except what he said to Trogdon.

On cross-examination of the defendant Abeles, he said: "I knew Mr. Childress was to get a commission if the deal was consummated. I know that he got a commission for a while. I knew Mr. Trogdon stopped it, because Mr. Troutman and I asked him to stop it."

The defendants' evidence in brief tends to show that their letter to the Trogdon Furniture Company that they must decline to do any further business with it through plaintiff and their order for merchandise with the statement, "No commission is due to any one on this order, and is given in this manner," were caused by plaintiff being in competition with them, and not by reason of the $256.00 dispute; that Abeles never told plaintiff, if he sued him for the $256.00, he would knock him out of thousands of dollars of commissions.

There is no evidence in the Record as to plaintiff being in competition with defendants, unless such an inference can be drawn from plaintiff's showing Ray Trogdon the blue prints of Tele-King Corporation's cabinets, and what he said to Trogdon.

The jury answered the first issue: "1. Did the plaintiff have a contract with Trogdon Furniture Company for the payment of commissions on merchandise sold by that company to the defendants, as alleged in the complaint? Answer: Yes.

"2. Did the defendants wrongfully interfere with the contractual relationship between the Trogdon Furniture Company and the plaintiff, as alleged in the complaint? Answer: Yes.

"3. If so, was the action of the defendants in interfering with the plaintiff's contract actually malicious? Answer: Yes."

The jury answered the issue of actual damages $17,860.00, and the issue of punitive damages None.

From judgment signed in accord with the verdict, the defendants appeal, assigning errors.

*Thomas Turner* for *Plaintiff, Appellee.*
*Womble, Carlyle, Martin & Sandridge, York & York*
    *By: W. F. Womble* for *Defendants, Appellants.*

PARKER, J.   The defendants contend by their assignments of error that the lower court erred in overruling their demurrer *ore tenus* made during the introduction of evidence, in denying their motion for nonsuit, in admitting and excluding testimony, and in charging the jury.   Before

discussing their assignments of error, we advert to certain relevant principles of law.

"The right to make contracts is both a liberty and a property right." *Coleman v. Whisnant,* 225 N.C. 494, 35 S.E. 2d 647; *Morris v. Holshouser,* 220 N.C. 293, 17 S.E. 2d 115. In consequence, the overwhelming weight of authority in this nation is that an action in tort lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party. *Bryant v. Barber,* 237 N.C. 480, 75 S.E. 2d 410; *Coleman v. Whisnant, supra; Jones v. Stanly,* 76 N.C. 355; cases collected in the annotations of 26 A.L.R. 2d 1227 and 84 A.L.R. 43; 30 Am. Jur., Interference, Secs. 18-32; 86 C.J.S., Torts, Sec. 44; Restatement of the Law of Torts, Sec. 766.

To subject the outsider to liability for compensatory damages on account of this tort, the plaintiff must allege and prove these essential elements of the wrong: First, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. *Eller v. Arnold,* 230 N.C. 418, 53 S.E. 2d 266; *Winston v. Lumber Co.,* 227 N.C. 339, 42 S.E. 2d 218; *Bruton v. Smith,* 225 N.C. 584, 36 S.E. 2d 9; *Kirby v. Reynolds,* 212 N.C. 271, 193 S.E. 412; *Swain v. Johnson,* 151 N.C. 93, 65 S.E. 619; 28 L.R.A. (N.S.) 615; *Holder v. Mfg. Co.,* 138 N.C. 308, 50 S.E. 681; *Haskins v. Royster,* 70 N.C. 601, 16 Am. R. 780. *Second,* that the outsider had knowledge of the plaintiff's contract with the third person. *Sinealh v. Katzis,* 218 N.C. 740, 12 S.E. 2d 671; *Morgan v. Smith,* 77 N.C. 37; *Haskins v. Royster, supra.* *Third,* that the outsider intentionally induced the third person not to perform his contract with the plaintiff. *Holder v. Mfg. Co.,* 135 N.C. 392, 47 S.E. 481; *Haskins v. Royster, supra;* 30 Am. Jur., Interference, Sec. 22. *Fourth,* that in so doing the outsider acted without justification. *Dulin v. Williams,* 239 N.C. 33, 79 S.E. 2d 213; *Winston v. Lumber Co.,* 228 N.C. 786, 47 S.E. 2d 19; *Bruton v. Smith, supra; Coleman v. Whisnant, supra; Holder v. Bank,* 208 N.C. 38, 178 S.E. 861; *Elvington v. Shingle Co.,* 191 N.C. 515, 132 S.E. 274; *Biggers v. Matthews,* 147 N.C. 299, 61 S.E. 55; *Haskins v. Royster, supra.* *Fifth,* that the outsider's act caused the plaintiff actual damages. *Haskins v. Royster, supra; Watts Co. v. American Bond & Mortgage Co.,* 267 Mass. 541, 166 N.E. 713, 84 A.L.R. 12.

The outsider has knowledge of the contract within the meaning of the second element of the tort if he knows the facts which give rise to the plaintiff's contractual right against the third person. "If he knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that there is no contract or that the contract means something other than what it is judicially held to mean." Restatement of the Law of Torts, Sec. 766(e). Justification imports "a

sufficient lawful reason why a party did or did not do the thing charged, a sufficient lawful reason for acting, or failing to act. It connotes just, lawful excuse, and excludes" legal "malice." 51 C.J.S. 421. As a consequence, the outsider acts without justification in inducing the breach of contract within the purview of the fourth element of the tort if he has no sufficient lawful reason for his conduct. *Townsend v. United States,* 95 F. 2d 352, 68 App. D. C. 223; *Louis Kamm, Inc., v. Flink,* 113 N. J. Law 582, 175 A. 62, 99 A.L.R. 1; *State v. Williams,* 166 S.C. 63, 164 S.E. 415; *Mercardo v. State,* 86 Tex. Crim. Rep. 559, 218 S.W. 491, 8 A.L.R. 1312.

There are frequent expressions in judicial opinions to the effect that malice is requisite to liability in an action for inducing a breach of contract. It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term "malice" is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification. *Coleman v. Whisnant, supra; Holder v. Mfg. Co., supra; Morgan v. Smith, supra; Haskins v. Royster, supra;* 30 Am. Jur., Interference, Sec. 23. Indeed, actual malice and freedom from liability for this tort may coexist. If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be. A "malicious motive makes a bad act worse, but it cannot make that wrong which, in its own essence, is lawful." *Bruton v. Smith, supra; Holder v. Bank, supra; Biggers v. Matthews, supra.* For this reason, actual malice is ordinarily material in an action for inducing a breach of contract only on the issue of whether punitive damages should be awarded. *Reichman v. Drake,* 89 Ohio App. 222, 100 N.E. 2d 533. See, also, in this connection *Wright v. Harris,* 160 N.C. 542, 76 S.E. 489. Notwithstanding it is not an element of the cause of action, actual malice may negative the existence of justification in a particular case. This is true because the outsider is never justified in inducing a breach of contract solely for the purpose of visiting his personal hatred, ill will, or spite upon the plaintiff. Restatement of the Law of Torts, Sec. 766(m).

In enumerating the essential elements of the tort, we omitted the use of the term "legal malice" to achieve simplicity of statement and promote clearness of comprehension. Legal "malice is proved if it appears that the defendant with knowledge of the contract intentionally and without justification induced one of the contracting parties to break it." *Meadowmoor Dairies v. Milk Wagon Drivers' Union,* 371 Ill. 377, 21 N.E. 2d 308; *Anderson v. Moskovitz,* 260 Mass. 523, 157 N.E. 601. Hence, malice

in a legal sense is necessarily present in all cases where the second, third, and fourth elements of the tort exist.

The accepted rule with us is to construe liberally a complaint with every reasonable intendment and presumption in favor of the pleader. The complaint must be fatally defective before its total rejection. *Winston v. Lumber Co., supra; Scott v. Veneer Co., ante,* 73, 81 S.E. 2d 146.

The complaint in substance alleges the existence of a valid contract between the plaintiff and the Trogdon Furniture Co., conferring on plaintiff contractual rights against the Trogdon Furniture Co.; that the defendants had knowledge of this contract; that plaintiff had fully performed and was entitled to the full commissions, and the defendants intentionally and without justification induced the Trogdon Furniture Company not to perform its contract with the plaintiff to the plaintiff's actual damage. The allegations of the complaint, as amended, contain all the essential allegations necessary to recover damages for wrongfully inducing a breach of contract, and the lower court was correct in overruling the defendants' demurrer *ore tenus.*

The defendants contend that they were entitled to judgment of nonsuit on these grounds: *One,* the defendants were acting in the exercise of an absolute right; *Two,* the plaintiff failed to prove the existence of a valid and enforceable contract between himself and the Trogdon Furniture Company because there was no consideration for the contract; that it was indefinite and uncertain, and that it was unenforceable by reason of the Statute of Frauds; *Three,* because the contract was terminable at will.

As to the defendants' contention that they were acting in the exercise of a lawful right, because the plaintiff was acting in competition with them. If the plaintiff was in competition with the defendants, the defendants would be justified in interfering. The evidence considered in the light most favorable to the plaintiff tended to show that the plaintiff had a valid contract with the Trogdon Furniture Company, that the defendants had actual knowledge of this contract, and intentionally and without justification induced the Trogdon Furniture Company not to perform its contract with him, and that he did not act in competition with defendants. A close reading of the entire evidence and the charge of the court shows that the case was tried below on these conflicting contentions, supported by evidence, and the jury decided in favor of the plaintiff.

The defendants contend there was no consideration for plaintiff's contract with the Trogdon Furniture Company. The plaintiff's evidence tends to show these facts: The defendants had a conversation with the plaintiff relative to procuring a contract from a manufacturer to make television cabinets and stands for them, and at that time the defendant Abeles said to plaintiff, if he could secure a manufacturer to make goods

for them "I'll see that you get commissions and I'll not interfere in your commissions in any way." When negotiations were initiated between the defendants and the furniture company, the defendants said the furniture company was to pay commissions to plaintiff. When the controversy arose between the plaintiff and the defendants over $256.00 owed plaintiff by defendants on a transaction not connected with plaintiff's or defendants' contract with the furniture company, both defendants being present, the defendant Abeles said to plaintiff, "if you sue me, I'll knock you out of thousands of dollars worth of commissions." The defendant Abeles said on cross-examination: "I knew Mr. Childress was to get a commission if the deal was consummated. I know that he got a commission for a while. I know Mr. Trogdon stopped it, because Mr. Troutman and I asked him to stop it." When the question arose as to whether the furniture company would make goods of a different design for defendants at a certain price, the furniture company told the defendants they could not at that price, unless the plaintiff's commissions were reduced. The furniture company saw plaintiff, who reduced his commissions, and the goods were made. Ray Trogdon testified when negotiations first started with the defendants, both defendants said he, Trogdon, was to pay commissions to plaintiff. This evidence tends to show that the agreement of the Trogdon Furniture Company, to pay commissions to the plaintiff was in contemplation of the plaintiff, the defendants and the Trogdon Furniture Company, when the contract was made between the defendants and the furniture company, and between plaintiff and the furniture company. Such evidence necessarily means that the agreement to pay the commissions to plaintiff was intended at the time of the execution of the contract between the defendants and the Trogdon Furniture Company as a part of the consideration for the contract, and the contract was a valid consideration for the promise to pay the commissions. It was not a past consideration. *Bryant v. Hayes,* 63 Ga. App. 440, 11 S.E. 2d 360; *same case,* 66 Ga. App. 221, 17 S.E. 2d 765; 1 Williston on Contracts, Sec. 142, Rev. Ed.

Ray Trogdon, president of the Trogdon Furniture Company, a witness for plaintiff, testified on cross-examination: "Any agreement was personal between me and Mr. Childress as my employee. There was nothing said between Mr. Childress and me as to how long I was going to pay him commissions. I felt at liberty to terminate my relationship at any time I saw fit. It was up to him and myself." The commissions were to be paid on sales to the defendants. The rate of commissions was fixed. This contract is terminable at will. *Phillips Lumber Co. v. Smith,* 7 Ga. App. 222, 66 S.E. 623; *Kirby v. Reynolds, supra; Elmore v. R. R.,* 191 N.C. 182, 131 S.E. 633; *Richardson v. R. R.,* 126 N.C. 100, 35 S.E. 235; Williston on Contracts, Rev. Ed., Vol. 1, Sec. 39. The contention of

defendants that plaintiff's contract is too indefinite and uncertain is not tenable. The law does not favor the destruction of contracts on such ground. *Fisher v. Lumber Co.,* 183 N.C. 485, 111 S.E. 857; *Chew v. Leonard,* 228 N.C. 181, 44 S.E. 2d 869.

The fact that plaintiff's contract with the Trogdon Furniture Company was terminable at will is not available as a defense to the defendants. *Mr. Justice Hughes* said in *Truax v. Raich,* 239 U.S. 33, 60 L. Ed. 131: "The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others . . . by the weight of authority the unjustified interference of third persons is actionable although the employment is at will." See also Anno. 84 A.L.R., p. 60 at f, where the authorities are assembled; 30 Am. Jur., Interference, p. 78.

*Elmore v. R. R., supra,* and *Richardson v. R. R., supra,* relied upon in defendants' brief, are not in point. Both were actions against the employer, not against third persons. In *Kirby v. Reynolds, supra,* relied upon by defendants, the facts are different; the plaintiff was *sui juris* and voluntarily resigned his employment.

The defendants contend also that the plaintiff's action should have been nonsuited because the agreement between plaintiff and the Trogdon Furniture Company was entered into in Georgia, and that Sec. 20-401 and Subsection 5 of said section of the Georgia Code Anno. provides that any agreement (except contracts with overseers) that is not to be performed within one year from the making thereof to be binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized.

This contention of the defendants is without validity. The overwhelming weight of authority is that the defense of the Statute of Frauds is personal to the parties to the contract, and such a defense is not available to strangers to the agreement. Georgia and North Carolina decisions are in accord with the general rule. *Saunders v. Sasser,* 86 Ga. App. 499, 71 S.E. 2d 709; *Gilbert Hotel No. 22, Inc. v. Black,* 67 Ga. App. 221, 19 S.E. 2d 796; *Waynesboro Planing Mill v. Perkins Mfg. Co.,* 35 Ga. App. 767, 134 S.E. 831; *Cadillac-Pontiac Co. v. Norburn,* 230 N.C. 23, 51 S.E. 2d 916; *Maney v. Extract Co.,* 194 N.C. 736, 140 S.E. 738; *Cowell v. Ins. Co.,* 126 N.C. 684, 36 S.E. 184, 37 C.J.S., Statute of Frauds, Sec. 220(a); 49 Am. Jur., Statute of Frauds, Sections 588, 589 and 591.

The defendants further contend that plaintiff has no cause of action against them for the recovery of actual damages because the plaintiff still has his cause of action against the Trogdon Furniture Company for damages for breach of the contract to pay him commissions. This contention has been rejected by the great majority of courts which have passed on the question. The fact that "A" also has a cause of action against "B"

for breach of contract does not prevent his having a cause of action in tort against a third person who wrongfully and without justification induces "B" to breach the contract with "A." *Lien v. Northwestern Engineering Co.* (S. D.) 39 N.W. 2d 483; *Louis C. Moser & Co. v. Kremer,* 192 Misc. 85, 80 N.Y.S. 2d 199; *Frischman v. Metropolitan Tobacco Co.,* 199 Misc. 844, 104 N.Y.S. 2d 446; *Phillips & Benjamin Co. v. Ratner,* 206 F. 2d 372; *Hornstein v. Podwitz,* 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1; *Harvey Corporation v. Universal Equipment Co.,* 158 Fla. 644, 29 So. 2d 700.

The defendants' motion for judgment of nonsuit was properly overruled.

The defendants in their brief have four assignments of error as to the court's rulings upon the evidence. They cite no authorities in support of their argument as to these assignments of error. We deem it necessary to discuss only one.

The court declined to admit in evidence a letter dated 26 July 1949 written by the Trogdon Furniture Company, apparently in response to the defendants' letter of 22 July 1949 to it. On 22 July 1949 the defendant Troutman wrote to the Trogdon Furniture Company in substance: The plaintiff and the defendants have reached a parting of the ways, as he has attempted to go into competition with us; for this reason we must decline to do any further business with you through Mr. Childress. The pertinent part of the letter of the Trogdon Furniture Company in reply follows: "Your announcement of a severance of all relations between you is somewhat shocking. Also, to have you tell me he is in competition with both you and ourselves is something he certainly has not discussed with me whatever. . . . As for our bringing to a close our deal with Mr. Childress, we don't see how this will be possible, legally or morally, as we are dealing with him strictly on a commission basis. This, of course, can be stopped by you by writing both of us, and indicating in your letters that a copy is being mailed to both ourselves and to him. In such announcement you could set out that from this date on any new business placed with us would be on a no-commission basis to Mr. Childress, or anyone else. We could then accept your new proposition on your terms." Plaintiff introduced in evidence the defendants' letter of 22 July 1949 to the Trogdon Furniture Company.

The evidence in the Record shows that the defendants had full knowledge of the facts which gave rise to the plaintiff's contractual right against the Trogdon Furniture Company, and full knowledge that the Trogdon Furniture Company was paying the plaintiff commissions on the goods manufactured and sold by it to them. Acting with this knowledge they knew that their acts in wrongfully inducing the Trogdon Furniture Company to breach its contract with plaintiff would be highly

---

---

injurious to him.  There is no evidence in the Record that the defendants followed the suggestion in the Trogdon Furniture Company's letter that the payment of commissions could be stopped *by writing both the Trogdon Furniture Company and plaintiff, and indicating in their letters that a copy is being mailed to both ourselves and to him;* and the failure of defendants to write a letter as suggested would seem to indicate that the defendants acted wrongfully, without justification and *with actual malice.* In our opinion the exclusion of this evidence was not prejudicial to defendants.

If the defendants had contended that this letter was competent to negative actual malice on their part—no such contention is made in their brief—its exclusion was harmless, for the jury awarded no punitive damages.

We have carefully read the court's charge to the jury in its entirety with particular attention to the defendants' exceptions and their argument and the authorities set forth in their brief, and are unable to perceive any prejudicial error therein which would justify the award of a new trial.

All the defendants' assignments of error are overruled.  The jury's verdict and the judgment thereon will not be disturbed.

No error.

HIGGINS, J., took no part in the consideration or decision of this case.